UNION COUNTY COURT OF COMMON PLEAS.

MANUEL J. SILBERMAN, WHO SUES AS WELL FOR THE
COUNTY OF UNION AS FOR HIMSELF, PLAINTIFF, v.
SKOURAS THEATRES CORPORATION, A CORPORA-
TION OF THE STATE OF DELAWARE, DULY LICENSED
TO TRANSACT BUSINESS IN THE STATE OF NEW
JERSEY, DEFENDANT.

Decided November 20, 1933.

For the plaintiff, *Samuel L. Rothbard.*

For the defendant, *Atwood C. Wolf.*

McGRATH, J.   This is an action brought by Manuel J. Sil-
berman, as a common informer, as well for the county, as for
himself, to recover from Skouras Theatres Corporation, a pen-
alty of $2,000 on each of four counts in the complaint.   The
plaintiff alleges that at various times, the defendant in viola-
tion of "An act for the punishment of crimes," as declared in
*Pamph. L.* 1898, *p.* 809, § 57 (*Comp. Stat., p.* 1764, ¶ 57), at
the Liberty Theatre, Elizabeth, conducted a lottery or game of
chance and thereafter delivered as a prize, a free automobile,
to the lucky holder of the winning ticket.   The plaintiff
further alleges that by virtue of an act entitled "An act to
prevent gaming," as declared in *Pamph. L.* 1871, *p.* 109
(revision of 1877, pages 458, 459—*Comp. Stat., p.* 2625, § 8),
the defendant has incurred a penalty for each lottery held, in
the amount of $2,000, or a total of $8,000.

The defendant gave notice that he would move to quash the

process, but at the hearing this motion was abandoned and both the plaintiff and the defendant agreed to submit the question of whether the complaint discloses a good cause of action and for this purpose a notice of motion to strike out the complaint on this ground has been waived by the plaintiff's attorney.

By an act passed September 5th, 1933, the legislature repealed the "act to prevent gaming" (on which this suit is based) and provided further that all liabilities, penalties or forfeitures already incurred, prior to the passage hereof, are and shall be hereby released and discharged and, further, that such. repealing act shall take effect immediately.

If this repealing act of September 5th, 1933, is constitutional, the complaint discloses no cause of action; and it is constitutional unless it is prohibited by the constitution as amended, which amendment was adopted at an election held September 27th, 1897, and which reads as follows:

"No lottery shall be authorized by the legislature or otherwise in this state, and no ticket in any lottery shall be bought or sold within this state, nor shall pool-selling, bookmaking, or gambling of any kind be authorized or allowed within this state, nor shall any gambling device, practice or game of chance now prohibited by law be legalized, or the remedy, penalty or punishment now provided therefor be in any way diminished."

The Gaming law was in force at the time the constitutional amendment was adopted in 1897 and the "act for the Punishment of Crimes" was also in force (1 *Gen. Stat., p.* 1059, 1060, §§ 52, 53), and was revised in 1898, without substantial change.

There is no doubt that the acts sued for were both a lottery and a game of chance and the only question is whether the legislature, by repealing the "act to prevent gaming," has in any way diminished the remedy, penalty or punishment which, at the time of the amendment, were provided for, and which the amendment intended to perpetuate.

Since this question arose, the Supreme Court, in the case of *Helen Dombrowski et al.* v. *The State of New Jersey,* 111

*N. J. L.* 546, has decided that the amendment referred to has placed a ban upon any legislative change in the penalty or punishment for the suppression of lotteries, and further says: "The constitution prohibits a change and until the fundamental law is changed its provisions are controlling, and the legislature may not disregard them." Also: "The legislature is powerless to lessen the punishment or offense even if it would be desirable so to do."

This pronouncement of the Supreme Court is equally applicable to this case if the action brought under the Gaming act is a remedy, penalty or punishment within the meaning of the amendment.

It is obvious that the Gaming law is a remedy. It is well known that suits for penalties have been used from early times to enforce laws against gambling and other violations of statutes and to encourage prosecution. At the present day there are numerous statutes providing for civil suits for penalties for violations of statutes which may or may not be criminal. The legislature in framing the Gaming law entitled it "An act to prevent gaming," and it is obviously a remedy in addition to the criminal law.

It is equally clear that the remedy provided by the Gaming law is a penalty in both the broad and narrow meaning of this term. "A penalty action is one which enforces a forfeiture or penalty for transgressing the law." The term "penal" is broader than "criminal" and relates to acts which are not necessarily criminal as well. *Marter* v. *Repp,* 80 *N. J. L.* 530; 77 *Atl. Rep.* 1030.

"In its broad sense penalty is a generic term which includes fines, as well as other kinds of punishments; but in its narrower sense, a penalty is the amount recovered for a violation of the statute law of the state or a municipal ordinance, which violation may or may not be a crime." 25 *Corp. Jur.* 1149.

The penalty provided by the Gaming law is also obviously a punishment. It provides: "Any person who shall offend in the premises shall forfeit for every such offense, two thousand dollars, &c." See, also, *Shoemaker* v. *State,* 20 *N. J. L.* 156; *Marter* v. *Repp, supra.* Bouvier's Law Dictionary

says that the term "penalty" applies mostly to a pecuniary punishment. In many of our penalty actions, although the suit is a civil one, failure to pay the penalty may lead to imprisonment, as in *Board* v. *Gruber,* 79 *N. J. L.* 257.

It is urged that the word "penalty" can be construed to mean only a fine or punishment in a criminal proceeding, but such a construction would ignore the established meaning of the word, and the established meaning of "remedy" and "punishment" as well.

When it is remembered that the Gaming law was in force when the constitution was amended; that the purpose of the amendment was to preserve the remedies, penalties and punishment then in force and that the Gaming law specifically provides for a penalty to be sued for in a civil suit, it is idle to say that the amendment did not refer to the provisions in the Gaming law. It cannot be assumed that the people, when they amended the constitution, were ignorant of the Gaming law nor can the history and purpose of the amendment as pointed out in *Dombrowsky* v. *State* be ignored.

It is also urged that the legislature could construe the word "penalty" in the sense of forfeiture and that in that sense the word would refer only to criminal proceedings. This construction would ignore the words "punishment" and "remedy" and would also ignore the fact that the word "penalty" is specifically used in the Gaming law as referring to a civil penalty. It would also ignore the obvious fact that the Gaming law was one of the remedies, penalties and punishments which the amendment was designed to perpetuate. As a matter of fact, the word "forfeiture" is frequently used in civil as well as criminal law and it is also used in actions for a penalty, although the action is a civil one. See *Conover* v. *Van Mater,* 18 *N. J. Eq.* 481, also *Marter* v. *Repp., supra.* All penalties recovered in a civil suit necessarily result in the forfeiture of money or some other thing.

It is also urged that the legislature can repeal the remedy, penalty or punishment, although they are forbidden to diminish the remedy, penalty or punishment. Such a construction would ignore the history and purpose of the act, and

lead to an absurd result, and besides, this question has been settled by the case of Dombrowski v. State, as already cited.

It is quite possible that the legislature may repeal an act providing for a remedy, penalty or punishment in the case of lotteries, as they did in the revision of 1898, with reference to "An act for the punishment of crimes," provided that at the same time they provide a statute of equal or greater efficacy. They have made no such provision in the repealing act now under discussion.

There is another ground on which the statute is clearly unconstitutional and that is, that by wiping out the civil suit for a penalty, leaving only the criminal statute, the legislature has diminished the remedy, penalty and punishment, even if we use the word "diminish" in the sense most favorable to the defendant.

There is no constitutional or common law principle which prohibits the punishment of a man in two or more ways for one and the same offense (Shoemaker v. State, 20 N. J. L. 156), and at the time of the constitutional amendment there was both a civil and a criminal remedy, penalty and punishment. By wiping out the civil statute, leaving only the criminal statute, the remedy, penalty and punishment which were in force at the time are diminished or made less, since only one form of remedy, penalty or punishment would remain.

The result of all this is that the repealer adopted September 1st, 1933, is unconstitutional and that the complaint in this suit presents a good cause of action, so far as that question is concerned.

The defendant further argues that if the legislature cannot repeal the criminal laws which were in force at the time the constitution was amended, the action of the legislature in repealing such criminal law in 1898 is unconstitutional and that if any criminal law has been violated, it must be the criminal law which was in force when the constitution was amended and which the legislature attempted to repeal in 1898. This argument is dipsosed of by the case of Dombrowsky v. State and by what has already been said in this opinion as to repeal. The constitution does not prohibit re-

peal so long as an equal or greater remedy is provided and the remedy, penalty or punishment is not diminished. The revision of 1898 made no substantial change in the criminal law and did not diminish the remedy, penalty or punishment.

A law ordinarily looks forward and the Gaming law applies to any lottery which is prohibited by the criminal law at the time that the lottery is erected. This suit is based on the Gaming law which was in force when the amendment was adopted and the penalty sued for is a violation of the "act for the punishment of crimes," revision of 1898, which was in force on the dates when the lotteries are alleged to have occurred. It is the violation of the criminal law which was in force at the time which gives the plaintiff the right to sue for the penalty under the Gaming law.

The motion to strike out the complaint on the ground that it discloses no cause of action is therefore denied, with costs.