INTERSTATE COMMERCE COMMISSION *v.*
UNITED STATES EX REL. CAMPBELL ET AL.

No. 748.   Argued April 21, 1933.—Decided May 8, 1933.

*Mr. Daniel W. Knowlton,* with whom *Mr. Edward M. Reidy* was on the brief, for petitioner.

*Mr. A. Henry Walter,* with whom *Mr. Johnston B. Campbell* was on the brief, for respondents.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

Upon a complaint filed by the Birch Valley Lumber Company against carriers by rail engaged in interstate commerce, the Interstate Commerce Commission determined that rates maintained by the carriers were unduly prejudicial to the complainant and unduly preferential to its competitors, but that the record would not support an award of damages. Thereupon the complainant sued in the Supreme Court of the District of Columbia for a writ of mandamus commanding the Commission to make an award of damages in accordance with a stated formula. The Court of Appeals, reversing the determination of the lower court, held that the writ should issue. 61 App.D.C. 382; 63 F. (2d) 358. The case is here on certiorari.

The complainant before the Commission, the respondent in this court, is a lumber company engaged in business at Tioga, West Virginia. Transportation service to and from Tioga is supplied by the Strouds Creek and Muddlety Railroad Company (the S. C. & M.), a short line railroad running from Delphi, West Virginia, to Allingdale in that state, a distance of nine and a half miles. The terminus of this road at Allingdale is a junction point with the Baltimore & Ohio Railroad (the B. & O.), and through it with connecting lines beyond. Lumber dealers on the route of the B. & O. have had the benefit of blanket

or group rates established by that road and others jointly. The complainant has had to pay the group rate, and in addition a charge for carriage on the S. C. & M., the short line connection. The result has been to put it at a disadvantage as compared with competitors in the same producing territory. "Complainant," it is found, "does not question the reasonableness *per se* of the blanket or group rates for Allingdale or the other points in the group, but assails only what it terms the relatively high through rates from Tioga and Delphi. It also admits that the charge of the S. C. & M. is not unreasonably high." The controversy hinges upon the effect of an unlawful preference.

For rate making purposes the producing territory tributary to the B. & O. in Pennsylvania, Maryland, and West Virginia is divided into several groups. One of these groups known as the Richwood group has its terminus at Allingdale. So also has another group known as number 9. Lumber dealers competing with the complainant do business within this territory, and pay the group or blanket rate, which takes no heed of distances within the group area. Cf. *United States* v. *Illinois Central R. Co.*, 263 U.S. 515, 522. In some instances the blanket rate has been extended to short line connections, but this has been exceptional, and has not included any points on the S. C. & M. The additional charge paid by the complainant for the short line connection between Allingdale and Tioga (7.1 miles) is $15 per car. Another lumber company, engaged in business at Delphi, intervened in the proceedings and joined in the complaint. Both the complainant and the intervening shipper were "forced to base their prices on the group rates and absorb the charges of the S. C. & M."

The Commission found that the failure of the carriers to establish joint or group rates over the short line connections had the effect of an undue preference to lumber companies doing business within the group territory,

though apart from the preference the rates were not un-
reasonable. Accordingly it made an order directed to
the B. & O. and other connecting railroads to "cease
and desist" from the unlawful practice. There was no
award of damages. "The record," the Commission held,
"will not support an award of reparation based on the
undue prejudice found to exist." ²

.The Interstate Commerce Act makes it unlawful for
a carrier to give any undue or unreasonable preference
to a person or locality, or to subject any person or locality
to an undue disadvantage (24 Stat. 380, § 3; 41 Stat.
479, § 405; 49 U.S.C., § 3), and charges the offender
with liability for the full amount of damages resulting
from the unlawful act. § 8. Upon the hearing of a
complaint, the Commission is empowered to ascertain
the damages and award them. § 16 (1). The respondent
by its complaint to the Commission invoked this dual
jurisdiction, the administrative jurisdiction to prescribe
a rule for the future (*Great Northern Railway Co.* v.
*Merchants Elevator Co.*, 259 U.S. 285, 291; *Baltimore &
Ohio R. Co.* v. *Brady,* 288 U.S. 448), and the judicial or
quasi-judicial jurisdiction to give reparation for the past.
*Baltimore & Ohio R. Co.* v. *Brady, supra.* In dismiss-
ing such a complaint, the Commission speaks with final-
ity. Its orders purely negative—negative in form and
substance—are not subject to review by this court or
any other. *Standard Oil Co.* v. *United States,* 283 U.S.
235; *Alton R. Co.* v. *United States,* 287 U.S. 229; *Procter
& Gamble Co.* v. *United States,* 225 U.S. 282; *Baltimore
& O. R. Co.* v. *Brady, supra.* Damages for discrimina-
tion denied by the Commission are not recoverable some-
where else.

.The respondent, conceding these restrictions upon the
remedies available in the courts, professes to abide by
them. The argument is that damages were found by the

Commission, and after being found were arbitrarily withheld. Damages were found, it is said, because the evidentiary facts set forth in the findings lead to a conclusion of damage in a determinate amount, and lead to that conclusion as an inference of law. Damages, being found, were arbitrarily withheld, because discretion is excluded when the loss is ascertained. In that view, the denial of an award is the breach of a ministerial duty to be corrected by mandamus, as if a court after determining in favor of a suitor the amount of his recovery were to refuse him execution.

■ "The record will not support an award of reparation based on the undue prejudice found to exist." This is not a finding that damages in the sum of $15 per car or in any other sum have been suffered by the complainant, but will not be awarded. This is a finding that upon the evidence before the Commission, which is not before us, there is not a sufficient basis for a finding of any damage whatever. Nothing in the recital of evidentiary facts is inconsistent as a matter of law with this negation of loss. The Commission does not find, and the complainant does not assert, that the rate was unreasonable in the sense that it would be subject to condemnation if a like rate had been charged to others similarly situated. What is unlawful in the action of the carriers inheres in its discriminatory quality, and not in anything else. When discrimination and that alone is the gist of the offense, the difference between one rate and another is not the measure of the damages suffered by the shipper. *Penn. R. Co.* v. *International Coal Co.,* 230 U.S. 184; *Mitchell Coal Co.* v. *Penn. R. Co.,* 230 U.S. 247, 258; *Southern Pacific Co.* v. *Darnell-Taenzer Co.,* 245 U.S. 531, 534; *Keogh* v. *C. & N. W. Ry. Co.,* 260 U.S. 156, 165. Cf. *Postal Tel. Cable Co.* v. *Associated Press,* 228 N.Y. 370, 379, 380; 127 N.E. 256. It is an evidentiary circumstance to be viewed along

with others in the setting of the occasion. It is not the measure without more. *Penn. R. Co.* v. *International Coal Co., supra; Keogh* v. *C. & N. W. Ry. Co., supra.*

Overcharge and discrimination have very different consequences, and must be kept distinct in thought. When the rate exacted of a shipper is excessive or unreasonable in and of itself, irrespective of the rate exacted of competitors, there may be recovery of the overcharge without other evidence of loss. " The carrier ought not to be allowed to retain his illegal profit and the only one who can take it from him is the one that alone was in relation with him, and from whom the carrier took the sum." *Southern Pac. Co.* v. *Darnell-Taenzer Co., supra,* p. 534. But a different measure of recovery is applicable " where a party that has paid only the reasonable rate sues upon a discrimination because some other has paid less." *So. Pac. Co.* v. *Darnell-Taenzer Co., supra.* Such a one is not to recover as of course a payment reasonable in amount for a service given and accepted. He is to recover the damages that he has suffered, which may be more than the preference or less (*Penn. R. Co.* v. *International Coal Co., supra,* pp. 206, 207), but which, whether more or less, is something to be proved and not presumed. *Ibid,* p. 204. " Recovery cannot be had unless it is shown that, as a result of defendant's acts, damages in some amount susceptible of expression in figures resulted." *Keogh* v. *C. & N. W. Ry. Co., supra,* p. 165. The question is not how much better off the complainant would be today if it had paid a lower rate. The question is how much worse off it is because others have paid less.

The answer to that question is not independent of time and place and circumstance. It calls for something more than the use of a mathematical formula. If by reason of the discrimination, the preferred producers have been

able tó divert business that would otherwise have gone to the disfavored shipper, damage has resulted to the extent of the diverted profits. If the effect of the discrimination has been to force the shipper to sell at a lowered market price (*Penn. R. Co.* v. *International Coal Co.*, *supra*, p. 207; *Hoover* v. *Penn. R. Co.*, 156 Pa. St. 220, 244; 27 Atl. 282), damage has resulted to the extent of the reduction. But none of these consequences is a necessary inference from discrimination without more. This complainant was in competition with producers in the Allingdale group. It was in competition, however, with many other producers doing business in distant territory, for its dealings were far flung. It had markets in Canada, Kentucky, Illinois, Michigan, Ohio, Pennsylvania, New York, New Jersey, Maryland, and the New England states. The finding is that " the lumber is sold in competition with that produced throughout the country," though " especially with that produced in the same general territory." For all that appears the prices charged for lumber by producers within the group were the market prices current generally throughout the entire field of competition.[1] If that is so, the producers in the favored territory were not making use of the preference to mark the price down to an equivalent extent, and thus deprive the complainant, less favorably situated, of a reasonable return. They were letting the price stend as it would have been if the tariff had been equal, and taking advantage of the preference to increase the profit for themselves.

---

[1] Cf. Donner Steel Co. *v.* Delaware, Lackawanna & Western R. Co., 92 I.C.C. 593, 599; Hylton Flour Mills *v.* Los Angeles & Salt Lake R. Co., 152 I.C.C. 81; Coal Switching Reparation Cases at Chicago, 36 I.C.C. 226; also the following cases in which the prices had been fixed by the government: Home Packing & Ice Co. *v.* Director General, 57 I.C.C. 691; Wharton Steel Co. *v.* Director General, 59 I.C.C. 11.

That was gain to them but it was not loss to the complainant.

The truth of this is seen more clearly when we keep in mind the varying methods available to remove discrimination and restore equality. The respondent argues as if there were one method, and one only, and this by cutting down the Tioga and Delphi rates and thus reducing them to the level of the rates within the group. But that is to ignore the other methods of adjustment open to the carriers. The discrimination might be removed either by cutting one set of charges down, or by lifting the other up, or by establishing a new rate intermediate between them. *United States* v. *Illinois Central R. Co., supra,* at p. 521; *American Express Co.* v. *South Dakota,* 244 U.S. 617, 624. The situation comes out into clear relief if we assume recourse to be had to the second of these methods. Rates within the favored territory might be raised to the same level as those outside of it, and yet after the change the complainant would be no better off, if the discrimination had not tended to hold market prices down. The profit of the favored shippers would in that event be less, just as it would be if they had been receiving a rebate from the published tariff (*Penn. R. Co.* v. *International Coal Co., supra*); but because their profit would be less, the conclusion would not be inevitable that the complainant's would be greater. The two would not fluctuate in any constant ratio. There would be no necessary correspondence between preference and damage. In varied situations the Interstate Commerce Commission has thus interpreted the doctrine of the International Coal case, and so given or withheld relief. The rulings of the Commission are consistent to the effect that the absorption by a complainant of a discriminatory charge does not avail to establish damage, or to measure its extent, in the absence of a showing that prices were affected by the differential

rate.[2]  There must be full disclosure of the conditions of the business, or of those affecting competition, including, in particular, the capacity of the preferred producers to fix the prices for the market.  Only then will the ultimate fact of damage emerge from the evidentiary facts as an appropriate conclusion.  One cannot say from this record that there was that disclosure here.

■ The result, however, would be the same if we were to assume *arguendo,* that there was error of law in the refusal to find the ultimate fact of damage as an inference from the evidentiary facts set out in the decision.  The respondent even then is faced with the difficulty that the Commission did not think the inference permissible, and so declined to make it.  One has only to read the opinions in *Pennsylvania R. Co.* v. *International Coal Co., supra,* and the cases that have followed it, to see how much the rule of damages is beset by delicate distinctions, how preëminently in applying it there is a call upon the judge to think and act judicially, to use judgment and discretion.  Errors of law in the discharge of a function essentially judicial are not subject to be corrected through the writ of mandamus any more than errors of fact.  If the Commission had declined to listen to the claim for reparation, or finding reparation due had declined to order payment, mandamus might have been available to hold it

---

[2] Memphis Freight Bureau *v.* Chicago & Eastern Illinois Ry. Co., 101 I.C.C. 26; Hylton Flour Mills *v.* Los Angeles & Salt Lake R. Co., 152 I.C.C. 81; Coal Switching Reparation Cases at Chicago, 36 I.C.C. 226; Wharton Steel Co. *v.* Director General, 59 I.C.C. 11; Home Packing & Ice Co. *v.* Director General, 57 I.C.C. 691; Donner Steel Co. *v.* D. L. & W. R. Co., 57 I.C.C. 745; Badger Lumber & Coal Co. *v.* A. T. & S. F. Ry. Co., 136 I.C.C. 350; Iten Biscuit Co. *v.* Chicago, B. & Q. R. Co., 53 I.C.C. 729; Stauffer Chemical Co. *v.* Houston & Brazos Valley Ry. Co., 142 I.C.C. 327.  Cf. Gallagher *v.* Pennsylvania R. Co., 160 I.C.C. 563; Brooks Coal Co. *v.* Wabash R. Co., 39 I.C.C. 426; Chicago Bridge & Iron Works *v.* Director General, 85 I.C.C. 99.

to its duty. That is not what happened. The Commission heard the complaint and proceeded to a decision. If the mandamus were to stand, the result would not be to compel the Commission to adjudicate the cause, for that it has already done; the result would be to compel an adjudication in a particular way. The rule is elementary that this is not the function of the writ. Mandamus is an appropriate remedy to compel a judicial officer to act. It may not be used as a substitute for an appeal or writ of error to dictate the manner of his action. *Interstate Commerce Commission* v. *Waste Merchants Ass'n*, 260 U.S. 32, 34; *Wilbur* v. *Kadrie*, 281 U.S. 206, 218; *Interstate Commerce Commission* v. *N. Y., N. H. & H. R. Co.*, 287 U.S. 178, 204.

The policy of the law has been to give finality to orders of the Commission negative in form and substance, and to keep them out of the courts. *Standard Oil Co.* v. *United States, supra; Alton R. Co.* v. *United States, supra; Procter & Gamble Co.* v. *United States, supra; B. & O. R. Co.* v. *Brady, supra.* A dissatisfied complainant is not permitted to escape these limitations indirectly by broadening the functions of mandamus when he is barred from more direct review. *I.C.C.* v. *Waste Merchants Ass'n, supra*, p. 35. There have been like attempts before in other branches of the law of remedies. *In re Pennsylvania Co.*, 137 U.S. 451, 454; *Missouri Pacific Ry. Co.* v. *Fitzgerald*, 160 U.S. 556, 581. They have met with no success.

The judgment of the Court of Appeals should be reversed and the petition for the writ denied.

*Reversed.*