## TERMINAL WAREHOUSE CO. v. PENNSYLVANIA R. CO. et al.

### No. 16774.

District Court, E. D. Pennsylvania.

May 8, 1934.

On Reargument June 1, 1934.

See, also, 4 F. Supp. 786.

Richard C. Bull, of Philadelphia, Pa., John J. Hickey, of Washington, D. C., and Thomas Raeburn White and White, Schnader, Maris & Clapp, all of Philadelphia, Pa., for plaintiff.

Owen J. Wister, Philip Price, John Hampton Barnes, and Barnes, Biddle & Myers, all of Philadelphia, Pa., for defendant Pennsylvania R. R. Co.

Geo. G. Chandler, Robt. T. McCracken, Montgomery & McCracken, and M. Hampton Todd, all of Philadelphia, Pa., for defendant Merchants Warehouse Co.

DICKINSON, District Judge.

This rule should be set down for reargument.

### The Fact Situation.

The significant facts in this cause have been reduced to few, indeed to one. One of the defendants is a railroad carrier; the other a public warehouseman. They made between them a contract, the purpose of which was that the carrier should have all the freight shipments controlled by the warehouseman, and the latter should be made a freight agent and its warehouse a freight station of the carrier. The inducement to the carrier was that it expected to get freight shipments which might otherwise go by some other line. The inducement to the ware-

houseman was that it was benefited in several ways in its struggle with its competitors for warehousing business. The most important of these were that it received (1) large sums of money which its competitors did not; it received (2) this pay from the carrier for services, the cost of which its competitors had themselves to bear; and (3) it was enabled to offer its patrons relief from the payment of demurrage charges which the patrons of other warehouses must incur. The carrier was compensated for the moneys paid the warehouseman and for demurrage charges not received, by having a share in the profits of the warehouseman. Beyond all doubt this arrangement was not only directly profitable to the favored warehouseman, but it gave it possession of a weapon for use in its fight with its competitors for business. The carrier and the warehouseman were both selfishly interested in extending the business of the latter to the point, if possible of attainment, of an absolute monopoly of the whole warehousing business. The weapon thus supplied might or might not be used in the commercial welfare. If it were not, the warehouseman was directly benefited by the agency compensation received and by being able to increase its warehousing rates measured by the value of the demurrage charges saved to its patrons, but this benefit to it was no damage to others. If the weapon were used, one use made of it could be to cut rates below the cost price of its competitors and thus secure a monopoly. This was a damage to its competitors. The distinction between a benefit to the favored warehouseman and an injury to others is worthy of being kept in mind.

### Appeal to the Commission.

An appeal was made to the Interstate Commerce Commission. This appeal had a three-fold purpose: (1) To have the agreement found to be and denounced as unlawful; (2) to obtain a "cease and desist" order; and (3) to be awarded reparation in damages. The appellants reached the first two objectives but damages were denied. The plaintiff was an active party to this proceeding.

 We may interpolate here several comments. One is that a complaint is directed wholly against the carrier; another is that no action for damages because of the practice of a carrier can be entertained until the commission has first declared it to be illegal, and the third is that the party damaged has the election to apply to the commission for reparation or to the courts and an appeal lies to the courts from the ruling of the commission except where purely negative. This means that the practice of a carrier can be made a cause of action only by a finding of illegality by the commission, but when the practice has been thus condemned, reparation in damages can be made by the commission or the courts at the election of the injured party. This it will be again noted applies only to a traffic charge or practice of the carrier. Independently of this remedy the injured party has another. The legislation known as the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15 note) denounces as unlawful all conspiracies in restraint of trade or to monopolize trade or business and gives a cause and a right of action to any one injured thereby.

### The Question Presented.

 This presents the main question raised by this rule. The defendants have strenuously and confidently urged that the plaintiff having invoked the powers of the commission to award it, the damages sustained because of the agreement between the defendants complained of as illegal, are bound by the finding of the commission and cannot resort to another form of action to recover the same damages. This question was first raised by a demurrer. It was ruled against the defendants because, as a question of pleading, the two causes of action were wholly different. An unlawful conspiracy is as unlawful when an unlawful end is reached by the employment of lawful means as it is when a lawful end is reached through the employment of unlawful means. As we have seen, no damages can be awarded by the commission nor by the courts because of some practice of a carrier unless and until such practice was found by the commission to be unlawful. It is this commission found illegality which gives the right of action for damages under the Interstate Commerce Act (49 USCA § 1 et seq.). It is because of this that it has been held that no action can be maintained against a carrier because of any practice as such without this preliminary finding of unlawfulness. Keogh v. Chicago & N. W. R. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183.

 Damages, however, may be recovered because of an unlawful conspiracy to monopolize without reference to any commission finding and indeed without a carrier being concerned in it. That a carrier is among the defendants is in itself a mere coincidence without significance. The question was again raised on the application for a subpoena duces tecum to require the production of books of account and was again ruled against the defendants. Because of these rulings the plain-

tiff invokes the doctrine that the ruling made has become part of the law of the case. We accept the doctrine but deny its application. It will be noted that the question ruled was one of pleading. It concerned only the cause of action and the right of action. It did not concern the question of damages. There may be an injuria absque damnum as well as damnum absque injuria. However clear the right of action, if the damages have already been recovered, they cannot again be awarded. If the right to damages has been submitted to a court of competent jurisdiction, whether allowed or denied, the same right cannot be submitted in another action. A ruling that a party has a right of action is not a ruling that a particular claim for damages may be recovered. The same question was accordingly again raised at the trial as an obstacle to the recovery of the damages claimed. This trial ruling is now properly under review. It is that had the commission awarded damages, the same damages could not be again awarded in this action. The plaintiff is as much bound by a judgment against it as one in its favor. It cannot recover in a second action for damages which it has been ruled in a former action it cannot recover. All this is clear enough. The difficulty in reaching a satisfactory conclusion is due to the circumstance that there have been here two wrongs with overlapping damages. The question may in consequence be thus stated:

Is a judgment in one case against one defendant for one cause of action a bar to another action against other defendants for another cause of action? Such a question likewise admits of easy answer.

To squarely face the question submitted, it may be presented in this form:

(1) An unlawful contract between a warehouseman and a carrier under which the favored warehouseman received preferential shipping treatment.

(2) A proceeding before the Interstate Commerce Commission by a warehouseman not so favored for his damages resulting from the unlawful contract.

(3) A finding that the claimant had not suffered damage.

Can the same claimant maintain an action against the favored warehouseman and the carrier for damages for an unlawful conspiracy under the Sherman Anti-Trust law? The question may be characterized as a close one. We frankly acknowledge that the strength of our conviction of the soundness of the view before entertained has been much

shaken by the arguments addressed to us. It may be noted that the damages sought to be recovered in the conspiracy action are the same damages which, under the ruling of the commission, might have been awarded by it. It will likewise be noted that the preferential shipping terms given the favored warehouseman, although an undoubted benefit to him, were not in themselves an injury to other shippers or even to public warehousemen who were shippers. The proceeding before the commission was against the carrier. Before the damages now claimed could have been established, it would have been necessary to show not merely that the preferential contract had been made by the carrier, but also that it had been used by the favored warehouseman as a means of promoting a monopoly to the damage of the present plaintiff.

We do not see how the carrier could have been held answerable for damages resulting from such monopoly without proof of his participation in a conspiracy to promote it. Had this proof been admitted, it would have transformed the proceeding before the commission into an action under the Sherman Anti-Trust Act. The claimant might possibly have treated the contract as a preferential concession in the tariff rates and asked for the return of what it had thus overpaid. Had it offered this proof at the trial of this cause, it would have been rejected as not bearing upon the damages flowing from any attempt to monopolize. This was the view we attempted to express in the charge to the jury.

Before announcing our adherence to it, we think the question should be further argued. We have a higher measure of respect for the judgment of the experienced counsel concerned with this cause, who have given more time and thought to the question raised than we could possibly give, than we have for our own more or less hastily reached conclusions. None the less we are bound to follow our own judgment.

█ The senior counsel for the warehouse company began his terse and compact argument, which was limited to this question, by directing attention to what the plaintiff has asked the commission to do and to the language of the commission in refusing reparation. We feel the very great force of the argument which counsel has drawn from this. We agree that the commission is presumed to have considered and passed upon every claim for damages which it was within its power to have awarded.

This brings into the discussion a question upon which we have not had the benefit of an expression of the views of counsel. It is whether the commission might have awarded the same damages awarded by the jury.

It was arranged at the argument at bar that we should limit our ruling to the questions discussed bearing upon the granting of a new trial, leaving the question of the judgment to be entered for further discussion, if this should be necessary.

In view of this we order the motion for a new trial and in arrest of judgment down for reargument upon the question suggested in this opinion, with leave to counsel to discuss any questions which in their judgment should be discussed.

Reargument ordered.

## Sur Reargument.

This cause was set down for reargument upon one question because this had not been discussed by counsel for plaintiff. We gave leave, however, to rediscuss any questions which counsel might wish to reurge. We think the controlling question is the one herein discussed. Counsel for the defendants have, however, two other questions to which we will first advert.

1. The trial court left to the jury the questions of (1) interstate transportation, (2) conspiracy, and (3) monopoly.

It is urged that these questions should have been determined by the court. If the defendants had the right to binding instructions in their favor upon any of these questions, no judgment should be entered on the verdict. We were asked but refused to so rule. Whether the questions were properly for the court or for the jury is of no importance if the verdict of the jury and the judgment of the court are in accord.

We adhere to the rulings made and think these questions have been sufficiently discussed. We were asked to rule as defendants think we should have ruled. This was refused. The defendants are fully protected by the exception taken.

2. The second point made is that the jury applied a measure of damage which the plaintiff conceded was an improper measure.

If two are competitors for a trade and one receives a sum of money which the other does not, this money may be used to secure to the favored competitor a larger share of the trade than he would otherwise have secured. The unfavored competitor may be said to be hurt because the share of the trade which he secures is less than would otherwise be his. He thus loses the profits on what may be called lost business. There is, however, no way of determining the volume of the business thus lost. The plaintiff clearly admitted this. The complaint is that the jury computed damages which the plaintiff admitted could not be computed. An all-sufficient answer to this complaint is that such measure of damages was disclaimed by the plaintiff, was not submitted to the jurors, and was not applied by them. It may be added that the only criticism of the damages awarded as to adequacy comes from the plaintiff. The criticism is that the defendants informed the jury of the trebled damages given by the Sherman Anti-Trust Act (section 7 [15 USCA § 15 note]) and the jury discounted the judgment which would be entered on the verdict. The defendants do not complain of the sum awarded by the verdict.

3. As we have said, the controlling question is whether the plaintiff, having asked for and been given an award by the Interstate Commerce Commission, can recover the same damages under the Sherman Act. The fact that the award was negative makes no difference.

The experienced counsel for plaintiff, having the courage of his convictions, has frankly made two admissions. He admits that the plaintiff made claim before the commission for reparation, which included the same damages which the jury awarded, and further admits that if the commission had the jurisdictional power to award the damages allowed by the jury, the plaintiff cannot recover in the instant case.

This reduces the question before us to the one of whether the commission had this power. The defendants confidently assert that the question suggested has already been determined by the courts. Before inquiring into these rulings, we may clear the ground by a few general observations.

There is a distinction between a cause of action or right of action and the damage sustained by a plaintiff or, as before stated, there may be injuria absque damnum as well as damnum absque injuria. The right of action given by the commerce acts is purely statutory. The conduct of common carriers engaged in interstate commerce is by those acts subjected to supervision, and acts found to be unlawful may be denounced and condemned. An injured party is given a right of action to recover reparation. There is no

right of action until and only as unlawfulness is found. The commission is given judicial or semijudicial power to find, when the power is invoked, the reparation to which a complainant has the right. The jurisdiction of the commission is restricted to common carriers and its awards so limited.

An injured party is given another right of action by the Sherman Anti-Trust law. The cause of action is wholly different from that of the right of action given by the commerce acts. It is given to recover damages flowing from an unlawful conspiracy. It is not restricted to carriers nor aimed at them as such. Any two or more persons may be conspirators. As before remarked, if one of the conspirators happens to be a common carrier, it is a mere coincidence. An overt act of the conspiracy may or may not have to do with the business of a carrier, nor does it matter whether the act is in itself lawful or unlawful for, as before said, a conspiracy may be unlawful because of an unlawful end, although the means by which accomplished may in themselves not be unlawful.

This we think is the doctrine of Keogh v. Chicago & N. W. R. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183. That case, it is true, was for a cause of action given by the Anti-Trust Act. The conspiracy charged, however, was a conspiracy among carriers to exact unlawful carrier rates. The commission had ruled that the charges exacted were not unlawful. To permit a jury under the Sherman Act to find the rates charged to be unlawful would be to deny to the commission the power to determine what rates were lawful.

The present action has a wholly different basis. It was for a charged conspiracy to monopolize the interstate part of the warehousing business. The commerce acts had directly nothing to do with it. The conspiracy would have existed and the damages recovered have been wrought if the practice of the carrier had not been found to have been unlawful. The wrongfulness of the practice did not affect the existence of the conspiracy, its unlawful character, or the damage suffered by the plaintiff. The commission could award damages only against the carrier qua carrier and for some practice as carrier condemned as unlawful. It would have no jurisdiction to award damages against conspirators who were not carriers, but in an unlawful conspiracy to do some act with which the commerce acts did not concern themselves. The fact that one of the conspirators was a carrier would not confer jurisdiction.

Another case upon which defendants rely is that of Interstate Commerce Commission v. United States, 289 U. S. 385, 53 S. Ct. 607, 77 L. Ed. 1273. Directly it does not touch the question now presented. There had been a proceeding before the commission and a "cease and desist order" directed to issue. The complainant had also asked for reparations which the commission refused to award. Application was made for a mandamus to compel the commission to make an award. This the court refused, holding the award made to be a judicial or semijudicial judgment. The duty of the commission was discussed and its scope explained. The discussion concludes with the statement that "damages for discrimination denied by the Commission are not recoverable elsewhere." Judicial utterances are not to be interpreted as abstractions, but always in the light of the fact situation to which they relate. The commission was being asked to make an award. It is fair to assume that it had the jurisdictional power to make or refuse to make the award asked. All the case rules is that its judgment could not be coerced nor could any other court make for it an award which it refused to make. This is far from ruling that one who has suffered damages through an unlawful conspiracy cannot recover for the injury done him because the Interstate Commerce Commission has found that he suffered no loss from the exaction of an unlawful rate by a common carrier. If the judgment of the commission concludes the plaintiff, it would seem to be on the res adjudicata principle. It will be noted as perhaps having some significance that the reference in the discussion is never to this principle but always to that of estoppel.

Another case upon which the defendants rely is that of Louisville & N. R. Co. v. Ohio Valley Tie Co., 242 U. S. 288, 37 S. Ct. 120, 61 L. Ed. 305. Here again the reliance is not upon the ruling made but upon general phrases which appear in the opinion. There had been an award by the commission and reparation allowed for an unlawful freight rate exacted. A suit was brought to recover business losses. This was based on the Commerce Act not the Sherman Act. The opinion, it is true, expresses the thought that the commission might have awarded reparation for "damages to (the complainant's) business," but this is qualified by the statement that it was for damages "following" the exaction of the unlawful freight rate. The language emphasized by the defendants is further qualified by the concluding words of the

490

opinion, "If at a new trial the plaintiff can prove that the defendant * * * caused it other damage not attributable to the overcharge of freight, our decision does not prevent a recovery."

It is further to be observed that the judgment in the court below was reversed because of elements of damage which were improper having been allowed and the case directed to be retried. The case cannot be properly viewed as supporting the proposition for which the defendants stand.

Still another case is that of Pennsylvania R. Co. v. International Coal Mining Co., 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315. The case may be misread because not well reported. It was based upon the Commerce Act because of preferential rates. No damage was proven, the plaintiff relying solely upon the fact that preferential rates had been given. If the case stands for the broad proposition that what is of benefit to one shipper is not necessarily an injury to another, it is in line with numerous other cases. That it will not bear the reading given to it by the defendants is clear from Meeker v. Lehigh Valley R. Co., 236 U. S. 429, 35 S. Ct. 328, 59 L. Ed. 644, in which it stated that the case does not so rule.

■ Without further expansion of an already overlong discussion, we state the conclusion reached. It is that the award or refusal of the commission to award reparation for the exaction of unlawful freight rates by a carrier is not a bar to an action by the same complainant against the same carrier and others under the Sherman Act for "damage to his business" through an unlawful conspiracy to monopolize the business in which the complainant is engaged.

■ We stand for the further proposition that a practice of a carrier who is a coconspirator may be used as an instrument to advance the ends of an unlawful conspiracy, for the damage done by which the conspirators are responsible, without regard to whether the practice of the carrier as such is in itself lawful or unlawful.

The action here is for damages suffered through an unlawful conspiracy. It is not brought under the commerce acts and those acts have to do with it only incidentally.

The rule for a new trial is discharged, and the motion in arrest of judgment denied, with leave to plaintiff to move for judgment on the verdict in accordance with the Sherman Anti-Trust Act, with costs, and counsel fees.