THE PEOPLE OF PUERTO RICO, represented by SERGIO CUEVAS, Commissioner of the Interior, Petitioner, *v.* RICARDO LA COSTA, JR., Judge of the District Court of San Juan, Respondent.

No. 360. Argued July 21, 1941.—Decided July 21, 1941.

*Emilio de Aldrey, Acting Attorney General,* and *Pablo Defendini, Deputy Assistant Attorney General,* for petitioner. *Brown, González & Newsom,* and *E. Córdova Díaz,* for intervener Porto Rico Railway, Light & Power Co., defendant in the main action.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The People of Puerto Rico, through the Commissioner of the Interior, instituted in the lower court a condemnation proceeding against the P. R. Railway, Light & Power Co., a corporation. The defendant filed a motion to strike out certain particulars from the complaint, which was denied, and then it demurred to that pleading on several grounds which were also overruled, whereupon it filed an answer to the complaint. The plaintiff filed a motion to strike out certain allegations of the answer, which was sustained, and then the defendant filed an amended answer, the case being subsequently tried and taken under advisement pending the filing of briefs. At this stage of the proceeding, the plaintiff, relying on Act No. 2, approved April 1, 1941, filed within said proceeding two documents entitled, "Declaration of Acquisition" and "Motion for Physical Delivery," respectively, which textually read as follows:

"Declaration of acquisition.

"Now comes Sergio Cuevas, Commissioner of the Interior of Puerto Rico, and states:

"1. The properties, rights, and privileges which will be described in the course of this statement are acquired under the authority of the provisions of Section 9 of Act No. 93, approved May 6, 1938; of the Act of Eminent Domain, approved March 12, 1903, as subsequently amended, especially by Act No. 44 approved August 6, 1935, and by Act No. 2, approved April 1, 1941; and of Act No. 94, approved May 6, 1938; and, further, by virtue and under the authority of the Organic Act of Puerto Rico and the provisions of the franchise which was granted by the Public Service Commission of Puerto Rico to the Porto Rico Railway, Light & Power Co., and which was approved by the Governor of Puerto Rico on January 4, 1928.

180

"2. The aforesaid properties are acquired in order to merge them into the hydroelectric system established and operated by the People of Puerto Rico and known as the Utilization of Water Resources and the same are acquired to be immediately applied to the above purpose.

"3. A description of the properties so condemned and to be acquired appears in 'Exhibits A and B', attached to this declaration as integral parts thereof, the properties therein described being the same as those also described in the complaint, filed in the present condemnation proceeding and entitled like the present declaration.

"4. The interest acquired in said properties for the aforesaid public purpose is that of a full ownership title.

"5. The properties condemned and acquired under the present proceeding are shown in the plats which are attached to this declaration as part thereof, and marked 'Exhibit C'.

"6. The sum estimated by the undersigned as a fair and reasonable compensation for such properties, including all rights, privileges, and holdings is $936,151.79, which has been deposited by the undersigned in the office of the clerk of this court prior to this date, that is, on the date of the filing of the complaint in the present condemnation proceeding. Said sum is at the disposal and for the benefit of the Porto Rico Railway, Light & Power Co., defendant herein, it being the opinion of the undersigned that the sum which will ultimately be fixed in the present suit as compensation for the said properties will be within the limits which according to law can and must be paid as the fair and reasonable value of said properties.

"In witness whereof, I sign the within Declaration of Acquisition and affix thereto the seal of the Department of the Interior at San Juan, Puerto Rico, this 27th day of May, 1941.

(Sgd.) "Sergio Cuevas,<br>
"Commissioner of the Interior."

"Motion for actual delivery.

"To the Hon. Court:

"Now comes The People of Puerto Rico, represented by its Commissioner of the Interior, and through the undersigned the Attorney General and Deputy Assistant Attorney General, respectfully states and alleges:

"1. That on this day it has filed in the instant case a Declaration of Acquisition executed by Sergio Cuevas, Commissioner of the Interior of Puerto Rico, pursuant to the provisions of Act No. 2, approved April 1, 1941.

"2. The plaintiff has deposited in the office of the clerk of this Hon. Court the sum that he considers to be a fair and reasonable compensation for the properties involved in this proceeding, to wit, $936,151.79, which sum is at the disposal and for the benefit of the Porto Rico Railway, Light & Power Co., defendant herein.

"3. The People of Puerto Rico urgently needs to take possession of the properties the object of this proceeding so as to apply them to the purposes stated in its complaint and in the 'Declaration of Acquisition' above mentioned.

"4. It is the opinion of the plaintiff that the defendant may reasonably make the actual delivery of the said properties within sixty days at the most from the date of the service of any order that might be made in this case.

"5. Wherefore, the plaintiff prays this Hon. Court to fix a term not exceeding sixty days for effecting the actual delivery of the properties sought to be condemned in this proceeding, which shall begin to run from the date of the service of notice of the order of the court.

"San Juan, Puerto Rico, May 27, 1941.

"George A. Malcolm,
Attorney General.
"Pablo Defendini,
Deputy Assistant Attorney General."

Those two documents were submitted to a new judge, and as his legal views differed from those entertained by his colleagues, who had heard the previous pleadings, he rendered, on May 29, 1941, an extensive decision, the dispositive part of which reads thus:

"As Sergio Cuevas, Commissioner of the Interior, is not empowered to represent The People of Puerto Rico, plaintiff herein, in the present action, nor to prosecute the same, the motion of the plaintiff for the actual delivery of the properties of the defendant is denied, on the ground that the present proceeding was not brought by, in behalf of, or under the authority of the People of Puerto Rico."

The People of Puerto Rico sought twice to have the above decision reconsidered and on both occasions such reconsideration was denied.

In a lengthy petition setting forth a detailed statement of the above facts and in which there are literally transcribed the different orders already referred to, the People of Puerto Rico applied to this court for a writ of mandamus directed to the Hon. Ricardo La Costa, Jr., Judge of the District Court of San Juan, to compel said judge "to assume jurisdiction of the proceeding brought in the District Court of San Juan by the People of Puerto Rico against the Porto Rico Railway, Light & Power Co., civil case No. 32557, a condemnation proceeding, and, therefore, to determine, decree, and order the actual delivery of the properties involved in the said proceeding, as provided by Act No. 2, approved April 1, 1941; and further to grant any other relief as might be proper in law."

An alternative writ of mandamus was issued in accordance with the prayer of the petition, and the 9th instant, at 2 o'clock in the afternoon, was set to hear the respondent should he decline to comply with the order made.

On the day preceding that of the setting, the respondent judge appeared by means of a motion in which he sought to have the alternative writ quashed, upon the following grounds:

(1) Because Sergio Cuevas, in his capacity as Commissioner of the Interior, can not represent the People of Puerto Rico which must be represented by the Governor, as was decided in *Ramón Morán & Co.* v. *Court*, 55 P.R.R. 618, and because the petition does not state facts sufficient to constitute a cause of action.

(2) Because the respondent did not fail to assume jurisdiction to consider both the case on its merits and the motion regarding the actual delivery filed in said case.

(3) Because respondent never refused to assume jurisdiction for the purpose of considering and passing upon the motion regarding the actual delivery of the properties of the Porto Rico Railway, Light & Power Co., nor did he dis-

claim jurisdiction or authority to take cognizance of the matter; it appearing, on the contrary, from the allegations in the petition for mandamus filed in the instant case that the respondent, in the exercise of his judicial functions and after considering the contents of the record in the aforesaid condemnation proceeding, the motion regarding the actual delivery, and the documents exhibited therewith, especially the declaration of acquisition subscribed by Sergio A. Cuevas, in his capacity as Commissioner of the Interior of Puerto Rico, decided to deny the aforesaid motion because, in the judgment of the respondent, the condemnation proceeding had not been brought by The People of Puerto Rico, or in its name or by its authority, and because the declaration of acquisition was not subscribed by the person or entity authorized by law to institute the proper condemnation proceeding, all pursuant to the provisions of Section 5A of Act No. 2 approved April 1, 1941, invoked by petitioner himself.

(4) Because, as the respondent has passed upon the questions submitted to him for consideration, the remedy of mandamus does not lie.

(5) Because it was not the ministerial duty of the respondent, in his capacity as Judge of the District Court of San Juan, to determine, decree, or order the actual delivery of the properties involved in the said condemnation proceeding, if, in his opinion and in the performance of his judicial functions, said proceedings had not been brought by, in behalf of, or under the authority of the People of Puerto Rico, and if the declaration of acquisition attached to the said motion was insufficient or lacked any of the requisites prescribed by Act No. 2, approved April 1, 1941, and no abuse of discretion could be charged against respondent herein for deciding the said motion as he did.

(6) Because it is the opinion of the respondent that the order made by him in the said incident is correct in accordance with the decision of the Supreme Court in *Ramón Morán & Co.* v. *Court, supra;* and

(7) Because, even conceding that said orders were erroneous, the same can not be reviewed on a writ of mandamus.

The respondent judge filed, together with his motion, a memorandum of authorities in support of his contentions.

There also appeared herein, as intervener, the Porto Rico Railway, Light & Power Co., defendant in the condemnation proceeding, and filed a lengthy motion setting forth its grounds of opposition to the petition for mandamus, in which it raised several questions, one of which, considered by us of great importance, is to the effect that: The writ of mandamus sought does not lie because, as appears from the petition itself, the lower court did not decline to take jurisdiction of or to pass upon the motion regarding the actual delivery of the Río Blanco hydroelectric plant, but that the said court, on the contrary, accepted, considered, and determined, in the exercise of its judicial functions, the petitions which gave rise to the present proceeding, and its decision did not rest on the lack of power or jurisdiction to take cognizance thereof but on the absence of one of the legal requisites necessary for ordering the immediate delivery of the Río Blanco hydroelectric plant, that is, lack of capacity or authority on the part of the Commissioner of the Interior to bring said proceeding in the name and on behalf of the People of Puerto Rico, as the writ of mandamus does not lie to compel an inferior tribunal to decide a controversy in a certain and definite way, as it is sought to have the lower court do in this case.

██ As appears from the foregoing facts, all of which are shown on the face of the mandamus petition, the respondent judge never refused to entertain the two motions entitled "Declaration of Acquisition" and "Motion regarding actual delivery," in connection with which was made the order that has given rise to the present mandamus proceeding. On the contrary, the judge assumed jurisdiction, and whether correctly or not, he exercised his judicial discretion

and decided the question. So that the judge did not refuse to take action, nor, as stated in the prayer of the petition for mandamus, did he say that he was without jurisdiction. Such being the case, the clear purpose of this petition for mandamus is no other than to review the order of the judge of the lower court. In other words, it is sought to use the writ of mandamus as if it were a remedy by appeal or for review.

That such has been the purpose of the petitioner in bringing the present mandamus proceeding unequivocally appears from the following paragraphs of its brief filed on the 16th instant, in which it says:

"Once again we assert that the sole purpose of the present mandamus proceeding is to review the opinion of the respondent judge who holds that the Commissioner of the Interior is not authorized by law to institute condemnation proceedings on behalf of the People of Puerto Rico.

"If this Hon. Court finds that the Commissioner of the Interior is legally empowered to that effect, the title of absolute ownership to the properties involved in the condemnation proceedings is now vested in the People of Puerto Rico, and the latter is absolutely entitled to compel the respondent judge to order the actual delivery of said properties, all pursuant to Act No. 2 of April 1, 1941, without the discretionary intervention of the respondent judge, except as to the way in which the actual delivery shall be made."

In such circumstances does the writ of mandamus as sought lie?

Section 2 of the Act to establish the writ of mandamus (Section 650 of the Code of Civil Procedure, 1933 ed.), in determining the functions of the writ of mandamus, provides as follows:

"Section 650.—The writ of mandamus may be issued by the Supreme Court or the district courts, or any justice or judge thereof, during the term or at chambers, to any inferior tribunal, corporation, board or person to compel the performance of any act which the law especially enjoins as a duty resulting from an office, trust or station, but though it may require an inferior tribunal, or any

judge thereof, to exercise this judgment, or proceed to the discharge of any of its functions, *it can not control judicial discretion.*"

In 18 Ruling Case Law 295, the applicable rule is set forth with great clearness, thus:

"One of the ancient offices of the writ of mandamus was to compel action by lower judicial tribunals respecting matters properly before them and within their jurisdiction. If, therefore, inferior courts decline to exercise their judicature mandamus is the appropriate means by which to set them in motion, though there are certain well recognized limitations surrounding its use. Chief of these is. the rule that while an inferior tribunal may be compelled to act on a matter within its jurisdiction it cannot be controlled in its. discretion; that is, the writ will not direct how officers or tribunals. shall act, or to what effect they shall exercise their powers, its. mandate being merely that the judge or court before whom a cause is pending shall proceed to hear and determine it. Even when an act is ministerial in character it has been said that if the proper performance thereof involves discretion, the writ will not direct a decision in a particular way. But if a judge declines to exercise his discretion, or to act at all, when it is his duty to do so, a writ of mandamus may be issued to compel him to act. Summarizing briefly, mandamus may be appropriately used and is often used to compel courts to act where they refuse to act and ought to act, but not to direct or control their judicial discretion; to compel the court. to hear and decide where they have jurisdiction, but not to predetermine the decision to be made; to require them to proceed to judgment, but not to fix and prescribe the judgment to be rendered."

See also the monographs on the subject published in 4 A.L.R. 582, and 82 A.L.R. 1163.

To the same effect is the holding of the United States: Supreme Court in the case of *Interstate Commerce Commission* v. *U. S.,* 289 U. S. 385, cited by the intervener. In that. case a complaint was filed by the Birch Valley Lumber Co.. against carriers by rail engaged in the interstate commerce,. in which it was alleged that the rates maintained by the carriers were unduly prejudicial to the complainant and unduly preferential to its competitors. The commission determined that the rates maintained by the carriers were unduly prej-

udicial to the complainant and unduly preferential to its competitors, but that the record would not support an award of damages.

According to the Act entitled "Interstate Commerce Commission Act," it is unlawful for a carrier to give any undue preference to a person or locality, or to subject any person or locality to an undue disadvantage; and it charges the offender with liability for the full amount of damages resulting from the unlawful act. Said act empowers the Interstate Commerce Commission to hear a complaint of such nature, to ascertain the damages, and to award them.

Feeling aggrieved by that decision, the Birch Valley Lumber Co. applied to the Supreme Court of the District of Columbia for a writ of mandamus commanding the commission to make an award of damages in accordance with a stated formula. That court refused to issue the writ, whereupon the company appealed to the Court of Appeals for the District of Columbia which reversed the order of the lower court and ordered the issuance of the writ in question. The Commission then resorted to the Supreme Court of the United States which in reversing the judgment of the Court of Appeals of the District of Columbia and speaking through Mr. Justice Cardozo said:

"Errors of law in the discharge of a function essentially judicial are not subject to be corrected through the writ of mandamus any more than errors of fact. If the Commission had declined to listen to the claim for reparation, or finding reparation due had declined to order payment, mandamus might have been available to hold it to its duty. That is not what happened. The Commission heard the complaint and proceeded to a decision. If the mandamus were to stand, the result would not be to compel the Commission to adjudicate the cause, for that it has already done; the result would be to compel an adjudication in a particular way. The rule is elementary that this is not the function of the writ. Mandamus is an appropriate remedy to compel a judicial officer to act. It may not be used as a substitute for an appeal or writ of error to dictate the manner of his action. (Citations)"

For the issuance of a peremptory writ of mandamus we would have to review the order of the judge of the lower court and hold the same to be erroneous for failure to correctly construe the laws invoked by the petitioner in support of the alleged authority of the Commissioner of the Interior to institute condemnation proceedings on behalf of the People of Puerto Rico. By so doing, we would infringe Section 2 of the Law of Mandamus above transcribed, and at the same time we would be running counter to that part of the decision of the Supreme Court of the United States in *Interstate Commerce Commission* v. *U. S., supra,* where it is held that "errors of law in the discharge of a function essentially judicial are not subject to be corrected through the writ of mandamus."

We agree with petitioner that there is a marked analogy between the instant case and that long list of cases in which, starting with the decision in *Dyer* v. *Rossy,* 23 P.R.R. 718, resort has been steadily had to the extraordinary remedy of mandamus in order to review the judicial discretion of lower courts in refusing to order the dismissal of criminal causes where, without justification, the defendant has been deprived of the right to a speedy trial secured to him by Section 2 of the Organic Act and by Section 448 of the Code of Criminal Procedure. Indeed, the doctrine invoked herein is not easily distinguishable from that established in said cases, unless we uncover the reasons which justify a deviation from the general rule. The rule followed in said cases was adopted from *Ex Parte Ford,* (Cal.) 116 P. 757; *McLeod* v. *Graham,* (Okla.) 118 P. 160, and others cited in *Dyer* v. *Rossy, supra.* In the last-cited continental cases the right is acknowledged to a speedy trial to every defendant so that, if innocent, he should be quickly exonerated from liability, and discharged if he were held in custody to answer the accusation. Notwithstanding the general acknowledgment of such right, a judge who feels inclined to act arbitrarily might put off the trial

indefinitely and if the defendant were released on bail he would never get rid of the troubles and inconveniences entailed by reason of a pending charge, unless he were allowed to avail himself of the writ of mandamus to compel the judge to try him.

It is contended in the *Ford* and *McLeod* cases, *supra,* that if no recourse could be had to the writ of mandamus in the above situation, the case might happen of there being a wrong without a remedy, as the remedy of appeal would be ineffective. This is so because should a defendant be released on bail he would be unable to have the conduct of the judge reviewed until the latter, at his leisure, should hold a trial. If, as the result thereof, the defendant were acquitted, there being no judgment of conviction, he would be unable to appeal and could not review the conduct of the judge who arbitrarily deprived him of his aforesaid constitutional right.

An effective remedy to this situation is offered in *Mc Leod* v. *Graham, supra,* where it is said, at page 163 of the cited volume:

"Whether or not the cause shown for the further continuance of a prosecution is sufficient is addressed to the discretion of the trial court, and, if the trial court abuses this discretion, it is subject to review upon appeal or in mandamus proceedings."

The rule adopted in *Dyer* v. *Rossy, supra,* and succeeding cases, is restricted to the enforcement of the constitutional right to a speedy trial. Therefore, the same is not applicable to the present case, where there is no ground to justify any deviation from the general rule sanctioned by the jurisprudence.

For the foregoing reasons, the alternative writ issued on June 23, 1941, is discharged and the application for a peremptory writ is denied.

Mr. Justice Todd, Jr., took no part in the decision of this case.