POSTAL TELEGRAPH-CABLE COMPANY, Appellant, *v.* THE ASSOCIATED PRESS, Respondent.

Telegraph companies — Interstate Commerce Law — an interstate telegraph line must serve its customers at reasonable rates and without discrimination — contracts for private or leased wires — discrimination in rentals for such wires — when lessee of private wire entitled to service at reduced rates granted to other and subsequent lessees of wires.

1. A public service corporation is not at liberty to grant extraordinary facilities to one man, and arbitrarily refuse them to another. What it grants to one, it must, in like conditions, when detriment would follow preference, grant impartially to all, within the limits of

capacity. Plaintiff cannot justify discrimination among customers by dividing contracts into new and old, and applying a different rate to each. The obligation of the law qualifies, and, in case of conflict, overrides, the obligation of the contract.

2. The act of Congress regulating interstate commerce imposes upon the plaintiff, an interstate telegraph line, the duty of fairness and equality in the treatment of its customers (Interstate Commerce Act, § 1, subd. 3, and §§ 2 and 3). It must serve them at reasonable rates and without unjust discrimination.

3. Plaintiff and defendant entered into contracts for the use of private wires by the latter at a fixed rate. Thereafter, and during the time of the contracts, the plaintff reduced its rates for like service. This action is brought to recover compensation at the rates fixed by the contracts. *Held*, that the recovery should be limited to the then prevailing rates.

4. As to one of the lines so leased, it is claimed that the discrimination against defendant is excused by proof of dissimilar conditions. The defendant, alone among the gatherers of news, was required by the plaintiff to submit to a deviation from the published rates. That was enough to put upon the plaintiff the burden of going forward with the evidence, of explaining and excusing. Upon the evidence, it might be held that the rate was meant to be a general one; that it took no heed of cost of service or of anything but mileage; that the defendant was singled out for adverse discrimination as the holder of unexpired contracts; and that the discrimination, unjust in conception, remained unjust in execution, and the customer, sued for payments in excess of the rates publicly established as applicable to all, may cut the payment down to the common level for himself.

*Postal Telegraph-Cable Co.* v. *Associated Press*, 184 App. Div. 590, affirmed.

(Argued March 9, 1920; decided April 13, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 27, 1918, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*D-Cady Herrick* and *William W. Cook* for appellant. The provision of the Interstate Commerce Act requiring

equality of service does not apply as between different localities where the circumstances and conditions are substantially different. (*Boston C. of C.* v. *L. S. & M. S. Ry. Co.*, 1 I. C. C. R. 436; *W. B. Assn.* v. *A., T. & S. F. Ry. Co.*, 30 I. C. C. R. 50; *Root* v. *Long Island R. R. Co.*, 114 N. Y. 300; *Parsons* v. *Chicago, etc., R. R. Co.*, 167 U. S. 447; *Van Patten* v. *Chicago, etc., R. R. Co.*, 81 Fed. Rep. 545; *Lough* v. *Outerbridge*, 143 N. Y. 27; *N. Y. Tel. Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502; *Homestead Co.* v. *Des Moines El. Co.*, 248 Fed. Rep. 439; *Penn. R. R. Co.* v. *International, etc., Co.*, 230 U. S. 184; *Meeker* v. *L. V. R. R. Co.*, 236 U. S. 412; *I. C. Comm.* v. *B. & O. R. R. Co.*, 145 U. S. 263.) The burden of proof was on defendant to prove that the leases at lower rentals were under substantially similar circumstances and conditions and also to prove prejudice, disadvantage or unreasonableness. (*L., etc., Co.* v. *B. & O. R. R. Co.*, 35 I. C. C. R. 20; Judson on Inter. Commerce [2d ed.], 267.) An increase or reduction of rates voluntarily made by a public utility company, not approved or required to be approved by any public service commission, does not affect an existing time contract as to rates for a term of years, and even if the contrary rule is to prevail the company is entitled to any consideration it has paid for such time contract. (*People ex rel. N. Y. Steam Co.* v. *Straus*, 186 App. Div. 787; 226 N. Y. 704; *Irvine* v. *P. Tel.-Cable Co.*, 173 Pac. Rep. 487.)

*William C. Cannon, Frederic B. Jennings* and *Harold W. Bissell* for respondent. There is evidence to support the finding of fact that the plaintiff made and established two successive reductions of rate for night leased wire service, which reductions were applicable to the kind of service involved herein. (*Nat. Bank* v. *Rogers*, 166 N. Y. 380.) The general reductions of rate voided the contract rates, and entitled the defendant to the benefit of the reduced rates, under the Interstate Commerce Act.

(*Gardner* v. *W. U. Tel. Co.*, 231 Fed. Rep. 405; *Western Union Co.* v. *Orr*, 158 Pac. Rep. 1139; *Western Co.* v. *Foster*, 113 N. E. Rep. 192; *Shoemaker* v. *C. & P. Tel. Co.*, 20 I. C. C. R.. 614; *Boise Comcl. Club* v. *Adams Express Co.*, 17 I. C. C. R. 115; *Postal C.-Tel. Co.* v. *Cumberland Tel. Co.*, 177 Fed. Rep. 726; *W. U. Tel. Co.* v. *Call Co.*, 181 U. S. 92; *Smith* v. *W. U. Tel. Co.*, 42 Hun, 454; *C., etc., Ry. Co.* v. *Hirsch*, 204 Fed. Rep. 849; *Tuinzer* v. *C., etc., Ry. Co.*, 191 Fed. Rep. 543.)

CARDOZO, J.   In August, 1912, the Postal Telegraph-Cable Company made a contract to furnish to the Associated Press the use of two private wires between Omaha, Nebraska, and San Francisco, California, for five years from November 1, 1912, one wire to be used day and night, except between the hours of 5 A. M. and 8 A. M., and the other to be used at night from 6 P. M. to 11 P. M., at the yearly rate for each wire of $24 per mile for service by day, and $12 per mile for service by night.   On December 29, 1912, there was a like contract for two private wires between Chicago and Omaha.   On January 1, 1915, there was a contract at the same rates, but for the term of one year, for a private wire between Lincoln and Omaha, Nebraska, and Sioux City, Iowa.   On March 14, 1915, there was a contract of indefinite duration, but at the same rates, for a private wire between Omaha and Sioux City. In September, 1915, the telegraph company established new rates for night service upon private wires used by press associations and newspapers.   Rates for press associations or news agencies were reduced on September 1, 1915, from $12 to $6, and on September 15, 1915, from $6 to $3.   Rates for newspapers were reduced from $10 to $5, and from $5 to $2.50.   The benefit of these reductions was refused by the telegraph company to the news agency conducted by the defendant under the name of the Associated Press.   This action is brought to recover compensation, at the rates fixed in the contracts, for the

use by the defendant of private wires in August, September, and October, 1915. The judgment of the Trial Term, affirmed by the Appellate Division, limits the recovery during the months of September and October to the then prevailing rates. The plaintiff, complaining of the limitation, appeals to this court.

The act of Congress regulating interstate commerce imposes upon the plaintiff, an interstate telegraph line, the duty of fairness and equality in the treatment of its customers (Interstate Commerce Act, sec. 1, subd. 3, and secs. 2 and 3). It must serve them at reasonable rates and without unjust discrimination (*Western Union Tel. Co.* v. *Call Co.*, 181 U. S. 92). Discrimination between the defendant and its competitors there has been. The plaintiff denies, however, that the discrimination is unjust. The argument is two-fold. There was no duty, we are told, to extend the new schedule to unexpired contracts. That excuse, if valid, applies to all the leases. If it fails, there was still no duty, we are told, to extend the new schedule to the contract for service between Omaha and San Francisco, because of extraordinary conditions permitting extraordinary charges.

I think the plaintiff cannot justify discrimination among customers by dividing contracts into new and old, and applying a different rate to each. The law says that under like conditions of service, charges shall be equal. The customer who covenants to pay in accordance with a schedule does not put himself outside of the protection of the statute, and give license to the carrier to show favor to his rivals. His covenant is made in contemplation of the carrier's duty so to operate a public business that discrimination will be avoided and equality maintained. I do not mean, of course, that equality must be absolute. By express permission of the statute, messages may be divided " into day, night, repeated, unrepeated, letter, commercial, press, Government, and such other classes as may be just and reasonable," and different rates may

be charged for the different classes (Interstate Commerce Act, sec. 1, subd. 3; *Matter of Private Wire Contracts,* 50 I. C. C. Rep. 731). But classes are not " just and reasonable " when the only principle of classification is one of order in time, with a resulting division between old customers and new. Favoritism would be unchecked if such a classification were accepted. Authority, which the statute gives, to distinguish between press messages and others, is not authority to distinguish between the press of to-day and the press of to-morrow, any more than between the press of here and the press of there. Division into classes is not the same thing as division into strata. No one would assert that a contract for a term of years would permit a carrier to discriminate in favor of old customers to the prejudice of new. Congress did not mean that it should be used as an excuse for discriminating in favor of new customers to the prejudice of old. A schedule that cannot be maintained against a revision of rates upwards, will not be interpreted as intended to survive a revision of rates downwards. The obligation of the law qualifies, and, in case of conflict, overrides, the obligation of the contract. For this conclusion, I think, the authorities are ample ( *Union Dry Goods Co.* v. *Georgia Public Service Corp.,* 248 U. S. 372, 375; *Portland Ry. L. & P. Co.* v. *Oregon R. R. Comm.,* 229 U. S. 397, 412; *Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467; *Armour Packing Co.* v. *U. S.,* 209 U. S. 56, 81, 82; *Shoemaker* v. *C. & P. Tel. Co.,* 20 I. C. C. Rep. 614; *Postal Cable-Telegraph Co.* v. *Cumberland Tel. & Tel. Co.,* 177 Fed. Rep. 726; *People ex rel. N. Y. Steam Co.* v. *Straus,* 186 App. Div. 787; 226 N. Y. 704).

The question remains whether discrimination has been excused by proof of dissimilar conditions. No such excuse is put forward as applicable to the contracts for service between Chicago and Omaha, and between Omaha and Sioux City. The excuse, if good, is confined in its application to the contract for service between Omaha and

San Francisco. The argument is that between those points no new agency other than the defendant has received from the plaintiff a private wire on any terms. Other agencies have private wires at reduced rates from Chicago to Denver, and from Chicago to Des Moines, but no farther. Between Denver and San Francisco, the line traverses the great desert and the mountains of the West. ·There is evidence of a high cost of maintenance in that region as compared with the cost elsewhere, though no attempt is made to state the difference in figures. For these reasons, the defendant, it is argued, enjoys a special privilege over the route from Denver to the coast, and should pay a special rate.

I think it was a question of fact whether these dissimilar conditions did constitute the true grounds of the discrimination between the defendant and its competitors, or were put forward as afterthoughts, following the event, to sustain a discrimination which in origin and purpose was invidious and hostile. In choosing between these alternative views, the trier of the facts would have to note that for many years before the reductions of September, 1915, rates for private wires had been fixed upon a mileage basis and no other; that the uniform charge was $24 per mile for day service and $12 for night service irrespective of the territory traversed; that the plaintiff made no extra charge when it gave the defendant a wire between Omaha and San Francisco, but maintained the existing rates; that the successive reductions in September, 1915, were announced to the press as reductions of fifty per cent in the rates for night service, without limitation of territory, or abandonment of the test of mileage; that new contracts under the reduced rates were made for service as far west as Denver; that the line of demarcation between the regions of high and of low rates was placed by the plaintiff's witness indefinitely, first at the Mississippi, and then at Denver, and then more vaguely at the Pacific coast; that day rates have remained constant

at $24 a mile from the Atlantic to the Pacific; and finally
that the plaintiff, in its dealings with the defendant,
drew no distinction between territory to the east of
Denver and territory to the west, but discriminated in
one district as in another, between Chicago and Omaha,
and between Omaha and Sioux City, as between Omaha
and the coast. I cannot say as a matter of law that a
discrimination, invidious and hostile east of the Missis-
sippi, became purified and innocent as it crossed the river
to the west. No doubt there was evidence of circum-
stances which the trier of the facts might interpret as
tending to exculpate. Other news agencies applied
between September, 1915, and September, 1916, for
private wires between Denver and the Pacific coast. The
applications were rejected, those for day service and those
for night service alike, because commercial messages in
that region had then become so profitable that the plaintiff
was no longer willing on any terms to give private wires
to any one. The date of these applications is only
vaguely stated, and we do not know whether they pre-
ceded by any substantial interval the cancellation of the
defendant's contracts in September, 1916, which followed
the plaintiff's announcement that the wires were then
needed for the service of the public. The significance of
these happenings in their bearing upon a discrimination
practiced in September, 1915, cannot be disposed of as an
inference of law, but was something to be weighed and
estimated by the court which passed upon the facts.
Other circumstances, much emphasized by the plaintiff,
must be held, I think, to have a significance equally
equivocal. The plaintiff had to string a new wire from
Denver to San Francisco to give the defendant service
upon two private wires as promised. We do not know
whether this necessity was something unusual in filling
a private contract. We do not know the cost per mile,
or its approximate relation to the burden put upon the
defendant in the maintenance of the higher rate. We

do know that whatever the cost, the plaintiff made its lease for this district as elsewhere upon the basis of the mileage covered. Stress is laid upon other provisions of the contracts. The defendant had the right to a *pro rata* abatement of the rental when there was interruption of service for one day or more. The contracts at the reduced rates, so far as they are in evidence, provide for rentals without abatement. These minor differences do not justify discrimination without limit. At the utmost they permit a cancellation of allowances, to equalize the rates for every one. I cannot find that there has been any deduction for interruptions in measuring the award under the four contested contracts.

In the end, with all these competing arguments struggling for the mastery, the problem that confronts us remains a problem of fact (*Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92, 103; *Int. Com. Com.* v. *Ala. Midland Ry. Co.*, 168 U. S. 144, 170; *Cin., N. O. & Tex. Pac. Ry. Co.* v. *Int. Com. Com.*, 162 U. S. 184, 194; *U. S.* v. *Louisville & Nash. R. R. Co.*, 235 U. S. 314; *Penn. Co.* v. *U. S.*, 236 U. S. 351, 361). The defendant, alone among the gatherers of news, was required by the plaintiff to submit to a deviation from the published rates. That was enough to put upon the plaintiff the burden of going forward with the evidence, of explaining and excusing (*Rice, Robinson & Winthrop* v. *W. N. Y. & P. R. Co.*, 3 I. C. C. Rep. 162, 169; *Richmond El. Co.* v. *P. M. R. R. Co.*, 10 I. C. C. Rep. 629, 636; *Matter of Rate Advance*, 24 I. C. C. Rep. 290, 291). Rates may be fixed in view of dissimilarities in conditions of service. Even then, there must be some reasonable proportion between the variance in the conditions and the variance in the charges. But above all, the dissimilarities must be in truth the basis of the schedule, the determining principle of conduct, and not a mere pretext or cover for partiality and oppression. A mileage rate, intended to be general and to apply to all alike, may not be refused to one, while conceded to all others,

and the departure from the schedule justified, as of course, by some fortuitous difference of conditions, ignored in the event, but prudently recalled thereafter. Dissimilarities, substantial and decisive when the structure of the schedule is framed upon one basis, may be unsubstantial and immaterial when it is framed upon another. Into every appraisal of the justice of discriminatory rates, there enters as a weighty factor the purpose of the carrier. Into every appraisal of purpose, there enters an estimate of the motives which prompted and determined action. In the case at hand, this task of appraisal was for the trier of the facts. His findings are conclusive in this court, if there is any evidence to sustain them. I cannot say that there is none. I think a reasonable man might not unreasonably believe that the rate was meant to be a general one from one ocean to the other; that it took no heed of cost of service or of anything but mileage; that the defendant was singled out for adverse discrimination as the holder of unexpired contracts; and that the discrimination, unjust in conception, remained unjust in execution.

We have yet to determine the effect of this injustice upon the rates payable by the customer. The defendant is not suing (under sec. 8 of the statute) to recover damages for a tort. It is not suing for the recovery of payments already made. It is defending against an attempt to charge it with something in excess of the established rates. What it resists is not merely a discrimination, but an overcharge. Every overcharge, when exacted of one to the exclusion of others, is, indeed, a discrimination. Not every discrimination is an overcharge. This case does not require us to hold that a customer, sued for the established and prevailing rate, may cut the payment down by proof, without more, that some favored individual, by force of illicit rebates, has obtained services for less. Whether the remedy is then in tort for the recovery of damages, which may be more than the rebate or less, and

often merely nominal (*Penn. R. R. Co.* v. *Int. Coal M. Co.*, 230 U. S. 184; *Mitchell Coal & Coke Co.* v. *Penn. R. R. Co.*, 230 U. S. 247; *Meeker & Co.* v. *Lehigh V. R. R. Co.*, 236 U. S. 412, 429; *Southern Pac. Co.* v. *Darnell-Taenzer Lumber Co.*, 245 U. S. 531, 534; *Homestead Co.* v. *Des Moines Electric Co.*, 248 Fed. Rep. 439), is a question not now before us. This is a case which requires us to say whether the customer, sued for payments in excess of the rates publicly established as applicable to all, may cut the payment down to the common level for himself (*Great Western Ry. Co.* v. *Sutton*, L. R..4 Eng. & Ir. App. 226, 239, 240, per Lord BLACKBURN; *Southern Pac. Co.* v. *Darnell-Taenzer L. Co., supra; Penn. R. R. Co.* v. *Int. Coal M. Co., supra,* at p. 202; *Union Pac. Ry. Co.* v. *Goodridge,* 149 U. S. 680, 697). There is a wide difference between claiming the benefit of a privilege conferred upon a few to the prejudice of the many, and resisting exclusion from privileges conferred upon the many, and denied only to a few. In one case, the customer is aggrieved because some one else is paying too little. In the other, he is aggrieved because he must pay too much himself. An overcharge results when the rate exacted is unreasonable (*Southern Pac. Co.* v. *Darnell-Taenzer L. Co., supra*). I think an overcharge also results when the rate exacted of the individual is in excess of the rate in force between the company and the public, for the public includes the individual as a component of the mass (*Great Western Ry. Co.* v. *Dutton, supra*). But the case does not turn upon the label of the plaintiff's conduct. Illegal it remains by whatever name we choose to call it. The statute prohibits special burdens as well as special privileges. Courts will not help the customer to recover an illicit rebate (*Chicago & Alton R. R. Co.* v. *Kirby,* 225 U. S. 155, 166). They will not help the carrier to impose an illicit burden. They stand aloof when it appears that the direct object of the action is to make illegality prevail. No doubt the direct object of the action is to be distinguished from its remote or collateral consequences.

Courts are not lending their aid to enforce a discrimination in contravention of the statute when, with proof of past preferences, they maintain the normal or established charges.   The discrimination is in the preference, whether it be a privilege or a burden, and not in the maintenance of the level from which preferences are measured.   There is a distinction between the mere omission to counteract the effect of a preference which has become an executed transaction, and active intervention in aid of a preference which is still an executory project.   The preference aimed at this defendant is still a project, and nothing more.   A judgment for the unequal rate will make it a reality. Unless the court will help the carrier, the discrimination remains abortive.   Judicial action is invoked to make it vital and effective.

I am not aware of any principle or precedent which puts a duty of that kind upon us.   We will not stir a step in furtherance of an illegal scheme (*Carrier* v. *Carrier*, 226 N. Y. 114, 123; *Oscanyan* v. *Arms Co.*, 103 U. S. 261; *Cont. Wall Paper Co.* v. *Voight & Sons Co.*, 212 U. S. 227).   Special privileges or burdens, if prohibited by law, will not be confirmed by the enforcement of the contracts which granted or imposed them (*Chicago & Alton R. R.* v. *Kirby, supra; Boston & M. R. R.* v. *Hooker*, 233 U. S. 97; *Merchants Cotton Press & St. Co.* v. *N. A. Ins. Co.*, 151 U. S. 368, 388).   The plaintiff presses the analogy of discrimination by the railroads.   The analogy is not complete, but, to the extent that it exists, it is not hurtful to the defendant.   The interstate commerce commission has ruled that no duty rests upon telegraph companies to file with the commission their tariff of charges (*Cultra* v. *W. U. Tel. Co.*, 44 I. C. C. Rep. 670, 673, 674).   Counsel assume this ruling to be law, and I follow their assumption. With railroads the rule is different.   The only legal rates for them are those on file with the commission.   Discrimination in favor of one shipper does not pull down the rate for others who have conformed to the established

tariff.   It gives a right of action for damages which may be nominal or substantial (*Penn. R. R. Co. v. Int. Coal M. Co., supra*).   Payments in excess of the established tariff stand, however, on a different basis.   These the shipper may recover to the extent of the excess, " not as damages, but as overcharge " (*Penn. R. R. Co. v. Int. Coal M. Co., supra,* at p. 202).   The analogy, extended to this case, gives a right of resistance to the customer who is wronged by a departure from the norm.   A tariff may be an established one for telegraph companies as for railroads (*Kansas City So. Ry. Co. v. Albers Com. Co.,* 223 U. S. 573, 574).   Its marks may be less definite and obvious.   To identify it may be harder.   None the less, while it exists, there is a like duty to adhere to it within the limits of equality and justice.   I think there is evidence justifying a finding that the plaintiff established a new tariff in September, 1915, as effectually as if it had put the changes in writing and filed them in a public office.   We do not need to question its good faith in refusing to extend the tariff to existing contracts with the defendant.   In all likelihood, it acted under a misconception of its duties.   Misconception could not change the remedies available for the protection of its customer.   Departure from the schedule, if illegal, became extortion, which might be answered by resistance.

In all that I have written, I have gone on the assumption that the plaintiff, when it made contracts for private wires, was acting as a common carrier within the definition of the act of Congress, and was subject to the duties inhering in that relation.   The plaintiff in the argument at our bar invited us to decide the case on that assumption, and expressly disclaimed any contention to the contrary. A ruling of the interstate commerce commission is in accord with the concession (*Matter of Private Wire Contracts,* 50 I. C. C. Rep. 731, 757, 759).   Private wires have become an important branch of the telegraph business. They are given, not only to the press, but to bankers and

brokers and many others (50 I. C. C. Rep. 731, at p. 738). They must be offered to those who need them with even-handed impartiality. A public service corporation is not at liberty to grant extraordinary facilities to one man, and arbitrarily refuse them to another. It need not depart from the beaten track at all. If it does, it must not govern the deviation by prejudice or favor. What it grants to one, it must, in like conditions, when detriment would follow preference, grant impartially to all, within the limits of capacity (*Chicago & Alton R. R. Co.* v. *Kirby*, 225 U. S. 155; *Louisville & Nashville R. R. Co.* v. *U. S.*, 238 U. S. 1, 20; *Penn. R. R. Co.* v. *Sonman Shaft Coal Co.*, 242 U. S. 120; *Hocking Valley Ry. Co.* v. *U. S.*, 210 Fed. Rep. 735, 741, 745; *Matter of Private Wire Contracts, supra*, at p. 761; *Express Cases*, 117 U. S. 1, 24, 25; *Windsor* v. *N. Y. C. & H. R. R. R. Co.*, 82 Misc. Rep. 38; 163 App. Div. 930; 220 N. Y. 695; *State ex rel. Ellis* v. *Atl. C. L. R. R. Co.*, 12 L. R. A. N. S. [Fla.] 506, 518).

The judgment should be affirmed with costs.

HISCOCK, Ch. J., CHASE, COLLIN, POUND, CRANE and ANDREWS, JJ., concur.

Judgment affirmed.