87 P.2d 676

SEABERG v. RATON PUBLIC SERVICE CO.

No. 4315.

Supreme Court of New Mexico.

February 15, 1939.

Crampton & Robertson, of Raton, for appellant.

Kiker & Sanchez, of Santa Fe, and Hugo Seaberg, of Raton, for appellee.

PER CURIAM.

Upon consideration of appellee's motion for rehearing, we have withdrawn the original opinion and substituted the following as the opinion of the court:

In the original opinion former Chief Justice HUDSPETH, who has since retired from the bench, dissented therein from the views of the majority. We deem it proper to note this fact.

ZINN, Justice.

Hugo Seaberg, appellee here and plaintiff below, sued the Raton Public Service Company, a corporation, the defendant below and appellant here, for $3,591.77 and interest thereon. The complaint alleged that the sum claimed was a wrongful overcharge made in excess of the established rate duly fixed by the company in the year 1926 and paid by plaintiff under protest for the period from January 1, 1929, until June 1, 1933. Judgment was entered for the appellee, and this appeal followed.

The facts upon which the suit is founded, are as follows: From about 1907 until June 1, 1933, the plaintiff operated the Seaberg Hotel in Raton, New Mexico. The hotel was operated both as a transient hotel and as a residence and apartment hotel. The defendant, The Raton Public Service Company, is a corporation organized under the Laws of the State of New Mexico. From the time of its organization until the suit, the defendant has been engaged in the business of generating and distributing electricity in the City of Raton for light, heat and power and other purposes. On March 16, 1926, an ordinance was adopted by the City of Raton known

as ordinance No. 279, which ordinance was unconditionally accepted by appellant. By the terms of this ordinance appellant was granted a franchise to carry on its business in the City of Raton. Sec. 8 of the ordinance reads as follows: "That no discrimination shall be made by the company, its successors and assigns, between the citizens or inhabitants of the City, and the Company, its successors and assigns, shall furnish all citizens and inhabitants of the City with electric light, heat and power, or any thereof, at the same uniform price fixed by this ordinance for like service under like conditions, or at such rates as may from time to time be adopted by the Company, its successors and assigns, never, however, to exceed the maximum rates herein fixed."

From the time of its organization in 1919 defendant furnished electric current to plaintiff for his use in and about the operations of his hotel at a basic rate of 5¢ per kilowatt hour for the first fifteen hundred kilowatts and 4¢ for each additional kilowatt consumed during the month in excess thereof. The current so furnished was measured through two meters, but was lumped together and charged for as if only one meter had been used. The plaintiff also received the 10% cash discount allowed if bills for current furnished were paid prior to the 10th of the following month. Beginning with May 1, 1926, plaintiff received an additional reduction of 10%. This system of charges continued until Jan. 1, 1929. During all this period the electric current received by plaintiff measured by these two meters was used in the hotel indiscriminately for light, heat and power.

After the month of May, 1919, Seaberg from time to time made additions to his hotel building, so that the building, which had prior to May, 1919, not more than 100 rooms, had at the time of the filing of this suit 200 rooms. In making the extensions, Seaberg, with the knowledge and consent of the defendant, merely extended electric wiring therein so that electricity could be furnished to all parts of such extensions through the meters used for the purpose of measuring said electricity for said combination purposes of lighting, heating and power. Appellant continued, until the 1st day of January, 1929, to furnish electricity to the Seaberg Hotel property, measuring said electricity through two meters for the combined purposes of lighting, heating and power, and billed Seaberg therefor as if only one meter had been used.

The case was tried to the court, who after hearing evidence made findings of fact and conclusions of law. These findings and conclusions are as follows:

"That said hotel building is so constructed, and the electrical wiring is so placed therein, that it has been an impossibility at all times since said additions and extensions were made, for plaintiff to arrange the same so as to make use of separate meters for the separate uses of electricity for lighting, heating and power used, without such expense as would have been ruinous and destructive to the plaintiff's busi-

ness as landlord to said permanent residential occupants of a portion of said property, as landlord to said transient guests in the other portion thereof.

"That on the 1st day of January, 1929, said defendant, without the publication of any new rates generally effective throughout the said city of Raton, attempted to increase the rates to be paid by plaintiff for said combined uses of electricity for lighting, heating and power in said Seaberg Hotel, measured as aforesaid, so that said rate would thereafter be the previously established rate for business lighting purposes, to-wit: Nine cents (9¢) per kilowatt hour (k.w.h.) for the first fifty kilowatt hours consumed during each month, plus eight cents (8¢) per kilowatt hour for the next 200 kilowatt hours consumed during each month, plus five cents (5¢) per kilowatt hour for all electricity in excess of said 250 kilowatt hours.

"That all the different rates established and maintained by the defendant for the different uses of electricity in the city of Raton, prior to January 1, 1929, including the rates to the plaintiff, were within the limits fixed by the city ordinance of the city of Raton, which said ordinance established maximum rates only, above which defendant could not charge.

"That there was no other user of electricity in the city of Raton of exactly the same class as the plaintiff, either prior to or following the 1st day of January, 1929, there being no other large building in the city of Raton used in a large part as pure-ly residence property, and in the remaining part as business property.

"That on January 1, 1929, or at any time thereafter, it would have cost the plaintiff more than $5,000.00 to have so equipped the said Seaberg Hotel property for the use of meters which could have measured separately the electricity used for heating, lighting and power; and if said sum of money had been expended for said property, plaintiff could not have controlled the use of electricity by his permanent tenants in said residence portion of said hotel so as to have restricted them to measurements thereof according to the classification for said heating and power; and if plaintiff had expended said sums of more than $5,000.00 for the purpose of so wiring said property that separate meters could be installed to separately measure electricity for the uses of lighting, heating and power, said money would have been thrown away for the reason that since the institution of this suit the said defendant company has abandoned the use of separate meters and has established a flat rate for the use of electricity for the combined purposes of heating, lighting and power by all users of electricity in said city.

"That at all times while said new additions were being made to said Seaberg Hotel property and electrical wiring was being extended thereto, the defendant company knew of said construction and of said wiring, and continued to furnish electricity to plaintiff for use in said extensions, measured through said two meters,

billing the plaintiff as if one meter only were used for electricity for the combined purposes of heating, lighting and power; and said extensions and additions would not have been made by plaintiff with wiring therein extended in the manner aforesaid except in reliance in the continued readiness of the defendant company to serve plaintiff with electricity measured through said meters for the combined use of lighting, heating and power.

"That no other user of electricity suffered any increased rate on January 1, 1929, or thereafter, during any time involved in that suit.

"That the rate charged to plaintiff prior to January 1, 1929, was fixed by defendant company in recognition of the use of electricity measured through said meters for the combined purposes of lighting, heating and power, and at a rate higher than that charged to users of residence property only for electricity measured in the same way, and at a rate somewhat lower than that used for purely business lighting purposes, so that the rate to plaintiff should be on an equality with rates charged to other users of electricity of all classes throughout said city of Raton, and that for a period of ten years the defendant company recognized the rate fixed for plaintiff as upon a plane of equality with the rates charged to users of electricity of all classes within the said city.

"That before increasing the rate charged to plaintiff on January 1, 1929, no inspection of the said hotel property was made by the defendant company or any other official or agent thereof for the purpose of undertaking to determine the amount of electricity used by plaintiff separately for lighting or for heating or for power; and said defendant company well knew on said first day of January, 1929, and at all times thereafter until the bringing of this suit, that plaintiff made use of the electricity furnished to him for purposes of heating and for purposes of power, but at all times after said 1st day of January, 1929, until the 1st day of June, 1933, the said defendant company charged plaintiff at the rate for electricity furnished for business lighting purposes only."

Conclusions of Law.

"2. That prior to January 1, 1929, and for many years, the defendant company had, within the limits of the franchise granted to it by the city of Raton, fixed and established rates for the use of electricity in said city of Raton; and that it had fixed a rate for the said Seaberg Hotel property, for use as both residence property and business property, for electricity measured through meters for the combined purposes of lighting heating and power, at a greater rate than that offered purely residential property and at a lesser rate than that offered to the public for purely business lighting purposes, and that the rate theretofore established for and charged for use in the Seaberg Hotel property, consisting of the use of said property for the combined purposes of residence property and business property, was on a plane of equity with the rates charged to other

users of electricity of all classes within the city of Raton.

"3. That action of the defendant company in raising the rates charged to the plaintiff on January 1, 1929, and thereafter, when rates were not increased as to any other user or users of electricity in said city, was taken without investigation or examination of the said hotel property of any use of electricity therein, and said action was arbitrarily taken and was in discrimination against the plaintiff.

"4. * * * That the said defendant had become estopped by its own conduct from having or collecting the different amounts which the plaintiff paid under protest and which amounted in all to the sum of $3,515.89, as above found to be due the plaintiff."

Counsel for the parties agree that the City of Raton properly exercised the power granted to it by 1929 N.M.Comp.St.Ann. § 90-402 when it passed the ordinance fixing maximum rates. They also agree that the doctrine announced in Kemp Lumber Co. v. Atchison T. & S. F. Ry. Co., 36 N. M. 126, 9 P.2d 387, which doctrine as stated in the syllabus is as follows: "Statute fixing maximum rates constitutes declaration that rates below maximum are reasonable * * *", applies to the ordinance adopted by the city council of Raton under which the appellant was operating.

Viewing the situation before us, then, insofar as the action of the appellee might be either deemed or argued as an attack upon the reasonableness of the rates and rate structure of the appellant, such argument is without merit.

The rates complained of by the appellee do not exceed the rates permitted by the ordinance. The ordinance provided maximum rates somewhat higher than the rates actually charged by the appellant to the appellee. In the ordinance itself we find recognition of the propriety of charging a higher rate for lighting purposes than for power or heating purposes. The ordinance does not require any so-called combination rate or rates for mixed purposes and the court cannot fix one.

Where then can we find justification for the trial court's judgment?

It necessarily must be found, if at all, in the plaintiff's claim of discrimination. Without discrimination there can be no foundation for the plaintiff's recovery in this case by merely claiming overcharge.

The discrimination of which appellee complains is that, though a rate had been established and long continued for his use in the property, partly business and partly residential—that is, a flat rate, this old rate was, beginning Jan. 1, 1929, utterly denied to the plaintiff, and he was arbitrarily required to pay for electricity used for power and heat, as well as for lighting, measured through a single meter, a purely business lighting rate.

Appellee does not contend that any other user similarly situated has paid less than such user should have paid. His claim is that he has paid more than he

should have paid because he has been lifted out of a classification in which he claims he did belong and which had been established by defendant company for him, and has been put into a classification in which he claims he does not belong. The appellee argues that this constitutes a discrimination which has resulted in an overcharge in the amount of the judgment rendered in his favor.

With this argument of the appellee we cannot agree.

Discrimination as between consumers will not be tolerated by the courts. Appellant asserts without challenge that to show discrimination a business consumer must allege and prove (1) that some other consumer similarly situated received preferential treatment and that, as between the two consumers, the utility discriminated in making charges, (2) that the other consumer who received the preferential treatment was a competitor of the plaintiff, and (3) that by reason of the discrimination the plaintiff has been damaged.

The findings of fact made by the trial court are entirely silent on the question of discrimination. Conclusion of Law No. 3 does, however, contain the statement that the increase in rates effective as to plaintiff on January 1, 1929, "was in discrimination against the plaintiff," and conclusion of Law No. 4 states that the plaintiff was overcharged "arbitrarily and in discrimination against him."

It does not appear in the record that others similarly situated were given a better or preferred rate. It does not appear that the plaintiff had any competitors. It is not shown what rates were charged to any other person in the city of Raton. It is not shown that plaintiff was damaged by any preferential treatment given to others.

Although the court found that there was no other business of the same class as the Seaberg Hotel, the court did find that there was under construction on Jan. 1, 1929, a large hotel which was completed in June of that year. The trustee of appellant was a director of the corporate owner. Nevertheless, no discrimination has been shown to result from this.

Appellee relies largely on the case of Texas Power & Light Co. v. Hilltop Baking Co., Tex.Civ.App., 78 S.W.2d 718, Jan. 10, 1935.

In that case, the plaintiff brought suit against the defendant for the recovery of alleged overcharges. Plaintiff alleged that defendant maintained two rates or schedules, one known as the MR rate, and the other known as the LP rate; and that the MR schedule was the cheaper of the two rates, and that under plaintiff's setup, considering the amount of the power consumed, and other necessary factors, plaintiff was entitled to the benefit of the MR rate; but that notwithstanding those facts, plaintiff was billed and required to pay for current consumed by it at the rate provided for in the LP schedule, and as a consequence was overcharged to the amount sued for. But in that case, however, the plaintiff also further alleged that during

said period defendant had supplied current to other consumers similarly situated, at the rate provided for in the MR schedule, and that as a result, plaintiff had been unlawfully discriminated against.

Here, however, in the case before us, the record shows that the appellee himself does not know anything about the rates charged to others and doesn't care anything about those rates. He does not question but that, if he had wired his premises so as to segregate the current according to the various classes of use he could have received current for light and heat at the reduced rate as provided in the schedule. The record does not show that any other user of electricity received preferential treatment.

There is therefore no discrimination against the appellee, and showing no discrimination he cannot recover.

The theory of the law is clearly stated in the case of Interstate Commerce Commission v. United States ex rel. Campbell, 289 U.S. 385, 53 S.Ct. 607, 77 L.Ed. 1273. The Birch Valley Lumber Company filed complaint with the Interstate Commerce Commission on the ground that rates maintained by certain carriers were unduly prejudicial to the plaintiff and unduly preferential to its competitors. The commission declined to award damages in favor of the plaintiff, whereupon the plaintiff commenced this action for a writ of mandamus to compel the commission to make the award. The Supreme Court, in an opinion written by the late great Mr. Justice Cardozo, denied the relief sought and said (page 609):

"The Commission does not find, and the complainant does not assert, that the rate was unreasonable in the sense that it would be subject to condemnation if a like rate had been charged to others similarly situated. What is unlawful in the action of the carriers inheres in its discriminatory quality, and not in anything else. When discrimination and that alone is the gist of the offense, the difference between one rate and another is not the measure of the damages suffered by the shipper. Pennsylvania R. Co. v. International Coal Min. Co., 230 U.S. 184, 33 S.Ct. 893, 57 L. Ed. 1446, Ann.Cas.1915A, 315; Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U.S. 247, 258, 33 S.Ct. 916, 57 L.Ed. 1472 [1476]; Southern Pac. Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 534, 38 S.Ct. 186, 62 L.Ed. 451, [455, P.U.R. 1918B, 598]; Keogh v. Chicago & N. W. R. Co., 260 U.S. 156, 165, 43 S.Ct. 47, 67 L.Ed. 183, [188]; Cf. Postal Telegraph Cable Co. v. Associated Press, 228 N.Y. 370, 379, 380, 127 N.E. 256 [P.U.R.1920E, 1]. It is an evidentiary circumstance to be viewed along with others in the setting of the occasion. It is not the measure without more. Pennsylvania R. Co. v. International Coal Min. Co. [230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas. 1915A, 315], supra; Keogh v. Chicago & N.W. R. Co. [260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183], supra.

"Overcharge and discrimination have very different consequences, and must be kept distinct in thought. When the rate exacted of a shipper is excessive or unreasonable in and of itself, irrespective of the rate exacted of competitors, there may be recovery of the overcharge without other evidence of loss. 'The carrier ought not to be allowed to retain his illegal profit, and the only one who can take it from him is the one that alone was in relation with him, and from whom the carrier took the sum.' Southern Pac. Co. v. Darnell-Taenzer Lumber Co., supra, (245 U.S. [531] 534, 38 S.Ct. 186 [62 L.Ed. 455, P.U. R. 1918B, 598]). But a different measure of recovery is applicable 'where a party that has paid only the reasonable rate sues upon a discrimination because some other has paid less.' Southern Pac. Co. v. Darnell-Taenzer Lumber Co., supra. Such a one is not to recover as of course a payment reasonable in amount for a service given and accepted. He is to recover the damages that he has suffered, which may be more than the preference or less (Pennsylvania R. Co. v. International Coal Min. Co., supra (230 U.S. [184] 206, 207, 33 S. Ct. 893 [57 L.Ed. 1455, Ann.Cas.1915A, 315]), but which, whether more or less, is something to be proved and not presumed. Id., page 204, of 230 U.S., 33 S.Ct. 893. 'Recovery cannot be had unless it is shown, that as a result of defendants' acts, damages in some amount susceptible of expression in figures resulted.' Keogh v. Chicago & N. W. R. Co., supra (260 U.S. [156] 165, 43 S.Ct. 47 [67 L.Ed. 189]). The question is not how much better off the complainant would be today if it had paid a lower rate. The question is how much worse off it is because others have paid less."

We assumed in our original opinion that appellee was contending that under any circumstances appellant would be estopped by the facts to deny that the appellee had enjoyed a flat rate for the use of electricity for heat, light and power for combined purposes, for more than 10 years prior to January 1, 1929, and that the flat rate was the equivalent of other rates for electricity in like quantities measured through separate meters and that this rate cannot be changed. On rehearing, appellee disclaims having relied upon estoppel. Such being the situation, the theory of estoppel requires no discussion.

For the reasons given the judgment will be reversed, the cause will be remanded, with instructions to dismiss the complaint and for costs to the appellant.

It is so ordered.

BICKLEY, C. J., and SADLER and MABRY, JJ., concur.

In the absence of Mr. Justice BRICE, who participated in this decision, we are authorized to announce that he concurs in the views herein expressed.