# RIO GRANDE VALLEY GAS CO. v. FORD.
## No. 11217.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 16, 1942.

On Rehearing Feb. 3, 1943.

Further Rehearing Denied March 3, 1943.

B. D. Kimbrough, of McAllen, and West & Hightower, of Brownsville, for appellant.

E. A. McDaniel, of McAllen, for appellee.

NORVELL, Justice.

Rio Grande Valley Gas Company has appealed from a money judgment rendered in favor of P. S. Ford, the plaintiff below. The action was based upon Article 1438, Vernon's Ann.Civ.Stats., which reads as follows: "It shall be unlawful for any such corporation [gas, electric current or power corporation] to discriminate against any person, corporation, firm, association or place, in the charge for such gas, electric current or power, or in the service rendered under similar and like circumstances." The Article is a part of Subdivision 4, Chapter 10, of Title 32, Vernon's Ann.Civ.Stats., wherein the powers of gas, electric current and power corporations are defined and the right to condemn and appropriate lands, rights of ways, easements and properties is conferred. Article 1436, Vernon's Ann.Civ.Stats.

Ford, as the owner of the Square Deal Laundry of McAllen, Texas, claimed that he was the victim of discrimination under the statute in that the appellant, a corporation engaged in the distribution of natural gas for use as fuel, exacted from him a higher rate or charge than that made to firms and corporations engaged in processing fruit and vegetables in the vicinity of McAllen, Texas.

The controlling question upon the issue of discrimination was submitted in the following form:

"Do you find from a preponderance of the evidence that the service rendered by defendant Gas Company to customers in McAllen at the rate of seventeen (17¢) cents per thousand cubic feet between the dates of April 1, 1938, and Dec. 1, 1940, was a service rendered under similar and like circumstances to the service rendered plaintiff's Laundry during said period of time? * * *"

The jury answered the above inquiry in the affirmative.

It appears that appellee's laundry was classified by the Gas Company as a "commercial" user, at a rate of from 20 to 30 cents per thousand cubic feet of gas consumed, while fruit and vegetable processors were classified as "industrial" users, at a rate of 17 cents per M. C. F.

There was no evidence in the record that any business competitor of appellee had been furnished gas at a lower rate than that charged appellee. In fact, there is no evidence that any one other than a fruit and vegetable processor received a rate of 17 cents per M. C. F.

The trial court submitted no issues to the jury concerning the amount of damages sustained by appellee, but entered judgment for the difference between the amount actually paid by appellee to appellant under the 20 to 30 cent rate and the amount he would have paid under the 17 cent rate.

The theory underlying this award of damages may be stated as a proposition as follows:

A plaintiff who shows that a public utilities company has sold gas to some person, not a competitor of the plaintiff, under similar and like circumstances to those

under which gas was sold to the plaintiff, but at a lesser rate, is, upon such showing, and nothing more, entitled to recover from the utilities company a sum of money equal to the difference between the amount actually paid by the plaintiff and the amount he would have paid under the rate afforded the more favored customer.

Appellee contends that this proposition is supported by Texas Power & Light Co. v. Hilltop Baking Co., Tex.Civ.App., 78 S.W. 2d 718, and Texas Power & Light Co. v. Doering Hotel Co., Tex.Civ.App., 147 S.W. 2d 897, affirmed by the Supreme Court 162 S.W.2d 938.

Appellant presents numerous points in support of his contention that the judgment of the trial court should be reversed. We are, however, of the opinion that its attack upon the validity of the proposition above stated, as embracing the theory of the trial court in awarding damages, must be sustained. This necessitates a reversal and rendition of the judgment appealed from and makes unnecessary a discussion of additional reasons for reversal urged by appellant.

"Every overcharge, when exacted of one to the exclusion of others, is indeed, a discrimination. Not every discrimination is an overcharge." Postal Telegraph-Cable Co. v. Associated Press, 228 N.Y. 370, 127 N.E. 256, 259. The Hilltop Baking Co. case, as well as the Doering Hotel Co. case, must be regarded as a case of overcharge involving a discrimination, while this case is one of discrimination which does not involve an overcharge.

As we see it, the theory of recovery supporting the award of damages in the Hilltop and Doering cases (stated as a proposition) is that when a plaintiff shows that he was charged for gas or electricity at a rate higher than the rate *he was entitled to receive,* he may recover from the public utility the amount of excess paid.

There can be little doubt but what the holdings of the Hilltop and Doering cases as to the award of damages are based upon a finding that the plaintiff was entitled to a lesser rate than the one charged.

In the Hilltop case it is said [78 S.W.2d 721]: "Here appellee is content if it be allowed to recover the difference between what it has been required to pay and *what it should have been required to pay.* This measure of damages seems to be the logical one to be applied in a case like the one here

under consideration." The amount which plaintiff "should have been required to pay" must necessarily refer to the amount which would have been due under the M. R. Schedule mentioned in the opinion, and the holding of the court is clear that the plaintiff *was entitled to the rates set forth in said schedule.*

The opinion of the Court of Civil Appeals in the Doering case deals primarily with the sufficiency of the evidence to support the jury's findings that a discrimination had taken place. As to the "transformer losses" discussed in the opinion, the Court cites and follows the Hilltop case holding that the proper measure of damages is the difference between the rate charged and the one which should have been charged. The Court further says:

"Appellant next contends that the judgment in allowing appellee recovery for transformer losses, and in addition the difference between what he paid on the L P rate and what he would have paid on the flat 2-cent rate for his current, allowed him to make a profit, at appellant's expense, of $2,909.30. We fail to see how this could be. Recovery for the transformer loss was but for the moneys paid for current metered to appellee which it did not receive; and recovery of the difference, the actual amount of current billed to appellee not being disputed, between what Doering paid for the current he actually received and used, and what he should have paid under a flat 2-cent rate, was merely a matter of calculation. And as we understand the record, this is what the court awarded in its judgment." 147 S.W.2d 906.

From the above quotation we take it that the Court regarded the transformer loss claim as one for money had and received —an overcharge, and further found that Doering was entitled to receive electricity under the flat 2-cent rate established by the utility.

There are many features which distinguish the Doering Hotel case from the one now before us, which we need not here notice, as it seems safe to say that the recovery allowed in that case is squarely bottomed upon findings that Doering was entitled to have his electricity metering secondarily, and was further entitled to receive electricity at the flat 2-cent per K. W. H. rate.

This brings us to a consideration of the applicable rules and principles whereby it is legally determined that a user of the

facilities and services of a public utility is entitled to a particular rate. Or the matter may be stated specifically, as applicable to this case, in the form of the following question: Has appellee shown himself entitled to receive a rate of 17 cents per M. C. F.?

 Rate making is primarily a legislative and not a judicial function. Texarkana & Ft. S. R. Co. v. Houston Gas & Fuel Co., 121 Tex. 594, 51 S.W.2d 284. This is not a proceeding in accordance with the provisions of Articles 1125–1132, inclusive, of Vernon's Ann.Civ.Stats. It follows therefore that in this action we are restricted to a consideration of classifications which have been in fact established by the utility itself or a proper legal authority, as we are not at liberty to either make new classifications, correct erroneous ones, or regard classifications as established, which we might believe in all fairness should be established.

Rate making authority for plants and industries within the corporate limits of the City of McAllen is vested in the governing body of said City, Art. 1119, Vernon's Ann.Civ.Stats., with right of appeal to and trial de novo by the Railroad Commission, and a further limited right of review by the district courts of Travis County. Community Natural Gas Co. v. Natural Gas & Fuel Co., Tex.Civ.App., 34 S.W.2d 900.

 It therefore seems that for appellee to show that he is entitled to a particular rate, he must show that he belongs to or comes under some classification for which a rate has been set, either by the utility or some agency vested by law with rate-making authority.

 The existence of a classification may be evidenced by a municipal ordinance, the ruling of a proper rate-making authority, by a published schedule of rates by the public utility, by the custom and practice of the utility, by the use of particular forms of contracts by the utility, or by a combination of the methods of proof above outlined. The Hilltop Baking case illustrates a classification established by use of a published schedule in connection with custom and practice.

 It follows that the issue of whether or not a particular classification has been established by a utility may be a question of fact, and consequently a question of sufficiency of the evidence to support a finding of classification may be presented.

The only action taken by the governing body of the City of McAllen with reference to rates to be charged for natural gas were the provisions contained in the franchise granted by the City to appellant, wherein it was provided that:

"*Section 7.* (A) The grantee (Rio Grande Valley Gas Co.) shall not charge or receive any higher rates than the following for natural gas furnished by it for any domestic consumer within the city limits than the rate of Ninety-eight Cents per thousand cubic feet; public buildings Seventy Cents per thousand cubic feet; churches Forty Cents per thousand cubic feet. * * *

"*Section 8.* Grantee shall charge and receive for natural gas furnished by it for any industrial consumer within the city limits such rates as it may from time to time elect, but there shall be no discrimination in rates between industrial consumers using equal daily quantities of gas under similar conditions."

We here interpolate that appellee did not plead that he had been discriminated against insofar as "daily quantities" of gas were concerned. His allegation was that there "were other industrial consumers in McAllen who did not consume *during the year* any more gas than" appellee.

It will be seen that the ordinance expressly permitted the public utility to exercise a wide discretion in establishing classifications of industrial users. The record contains no mention of a published schedule of rates, and the only documentary evidence of classification of industrial users seems to be the use of form contracts, i. e., the "Contract for Commercial Gas Service," under which appellee purchased gas from appellant, and the "Special Contract for Fruit and Vegetable Processing Plants, using in excess of 1,000,000 cubic feet per month," under which gas was sold to fruit and vegetable processors.

 For one to qualify as a member of the classification evidenced by the second contract mentioned, it would appear that he must be operating a fruit or vegetable processing plant and consuming 1,000,000 cubic feet of gas per month. However, as it was held in the Hilltop Baking case that a classification may be expanded beyond the written definition thereof contained in a schedule, by proof of a custom or practice adopted by the utility, we state here that there was no proof that the

"Special Contract" was offered to any person or corporation other than a fruit and vegetable processor. It does appear that under the terms of the "Special Contract" the fruit and vegetable processor did not contractually obligate himself to use 1,000,000 cubic feet of gas per month. It seems that during some months of the year the fruit and vegetable processors operating under the "Special Contract" did use in excess of 1,000,000 cubic feet per month, while during slack months a substantially less amount of gas was used. The classification evidenced by the "Special Contract" as modified by usage and practice included only fruit and vegetable processors who during certain months of the year used in excess of 1,000,000 cubic feet per month. This was the classification established by the evidence, and it was specific in nature in that only one industry, fruit and vegetable processing, was included therein. We are not here dealing with a generic classification embracing hotels, hospitals, dairies, etc., or cotton seed and grain mills, creameries, laundries, bakeries, gravel-loading companies and the like, as were the Courts in the Hilltop and Doering cases.

"There is a wide difference between claiming the benefit of a privilege conferred upon a few to the prejudice of the many, and resisting exclusion from privileges conferred upon the many, and denied only to a few. Postal Telegraph-Cable Co. v. Associated Press, 228 N.Y. 370, 127 N.E. 256, 259.

It is clear that appellee did not fall within the classification actually established. He was not a fruit and vegetable processor, nor did he at any time while operating under his contract with appellant use 1,000,000 cubic feet of gas in any one month. His maximum consumption for any one month appears to have been 664 M. C. F.

In view of the record before us, it is mere speculation to say that a 17-cent rate or a 20-cent rate, or any other particular rate for that matter, was a proper, just or equitable charge for appellee to have paid. We can not subscribe to the theory that proof that some particular person received a lower rate than a complainant even under circumstances which would amount to discrimination, is in itself and standing alone, proof of the existence of a particular classification and also proof of complainant's right to be included therein. This theory involves the substitution of fictions and unauthorized presumptions where facts are necessary.

We hold that there was no evidence showing that appellee was entitled to a rate of 17 cents per M. C. F. This case therefore involves no element of overcharge. It is not contended that the rate paid by appellee was in excess of that prescribed by the City of McAllen or any other regulatory body. This absence of an element of overcharge distinguishes this case from the Hilltop and Doering cases.

It therefore appears that the award of damages allowed by the trial court, as well as the measure of damages approved by said court, has no support in the proposition hereinabove stated as embracing the theory of recovery sustained by the Hilltop and Doering cases. It must be supported, if at all, by the proposition heretofore set forth as embodying the trial court's theory as the record supports no other.

An examination of the authorities considered as having some application to validity of the proposition involved indicates that they may be divided into three groups: (1) Those depending upon the particular wording of a statute, which are not in point here because of a dissimilarity of wording between the statute involved and the Texas statutory provision. (2) Those in which the rule that a complainant may recover the difference between the amount paid and the amount which would have been paid under the rate afforded the favored customer is strictly limited to those cases in which the favored customer is a business competitor of complainant. The theory seemingly underlying these decisions is that as the essence of the evil of discrimination is preference of one to the detriment of another—the measure of the detriment may well be the amount of the preference. This rule of course holds good only as between competitors. (3) Those which hold that the complainant can not recover unless it be shown that as a result of the discrimination complained of, he has suffered some pecuniary damage to his business.

None of these groups of decisions supports the recovery awarded appellee here, as the alleged favored customer was not his competitor. In certain cases wherein it appeared that complainant and the favored customer were competitors may be found statements which when lifted from their context might be construed to sup-

port appellee's position. Such position is not in our opinion, however, supported by anything like a sustained line of authority. The contrary view is so supported.

■■ In considering the first group of cases above mentioned, we might say at the outset that we do not regard Article 1438 as providing for an action upon a penalty which has been defined as an action for a sum of money as punishment for a civil·wrong as distinguished from compensation for the loss suffered by the injured party. Restatement of the Law, Conflict of Laws, p. 730, § 611; Silberman v. Skouras Theatres Corporation, 169 A. 170, 11 N.J.Misc. 907. No authority has been cited holding that the common law rule against discrimination gave rise to an action on a penalty in behalf of one who was a victim of discrimination, and therefore we take it that actual damage to appellee is an essential part of his cause of action.

In their attempt to guard against the evils growing out of discrimination in the rates of carriers and public utilities, certain states have passed anti-discrimination statutes which, to a certain extent, are penal in character, in that they permit a recovery according to a stated formula which may or may not reflect the actual damages sustained.. These statutes not only prohibit discrimination, but further provide that "all 'concessions in rates and draw backs shall be allowed to all persons, companies or corporations alike, for such transportation and service, upon like conditions, under similar circumstances and during the same period of time." Pennsylvania statute discussed in Hall v Pennsylvania R. Co., 257 Pa. 54, 100 A. 1035, 1041, L.R.A. 1917F, 414 (Colorado statute discussed in Union Pac. R. Co. v. Goodridge, 149 U.S. 680, 13 S.Ct. 970, 37 L.Ed. 896, see footnote).

In discussing the Pennsylvania Statute in Hall v. Pennsylvania R. Co., the Supreme Court of that State said:

" * * * The case of Union P. R. Co. v. Goodridge, 149 U.S. 680, 13 S.Ct. 970, 37 L.Ed. 986, involved the construction of a Colorado statute similar to our own statute *requiring railroads to make the same concessions to all persons alike*. It was there held the measure of damages was the amount of the rebate allowed other shippers. The case of Pennsylvania R. Co. v. International Coal Min. Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A,

315, relied upon by defendant as establishing a different rule, is distinguishable from the present case, as it involved a construction of the Interstate Commerce Act. * * *" (Italics ours.)

It seems, however, that even under the Pennsylvania statute it is necessary that the complainant and the favored shipper must be competitors before the rule that the measure of damages is the amount of difference between rates is applicable. The question involved is stated by the Pennsylvania Supreme Court, as follows:

"The first question raised by defendant's appeal is whether the measure of damages of a shipper who had not received the benefit of a concession in rates *given a competitor* is the amount of rebate given the latter. * * *" (Italics ours.)

See, also, discussion of Hoover v. Pennsylvania R. R. Co., 156 Pa. 220, 27 A. 282, 22 L.R.A. 263, 36 Am.St.Rep. 43, contained in the opinion.

Illustrative of the second group above mentioned is the case of Callender v. Northern States Power Co., 192 Minn. 591, 257 N.W. 512, wherein the Supreme Court of Minnesota said:

"The action is for damages for unjust discrimination. It is not claimed that the city paid a higher rate than the current was worth. It is conceded that the amount paid by the city was not in excess of the maximum rate fixed by the city council— the body authorized to fix and regulate rates of public service corporations operating under a franchise within the territorial limits of the city. It must therefore be taken as true that the city has paid no more than a just and reasonable rate for the current furnished. It has paid no more than the electricity furnished was worth. Hence there can be no recovery for money had and received, or for overpayment, or as reparation. But for unlawful and unjust discrimination by a public service corporation a patron thereof has a cause of action in tort upon allegation and proof of the damage or loss he has sustained therefrom. This is conceded by defendant. The two decisions of·this court in Sullivan v. Minneapolis & R. R. R. Co., 121 Minn. 488, 142 N.W. 3, 45 L.R.A.,N.S., 612, and Id., 127 Minn. 180, 149 N.W. 134, lay down the rule that when the one claiming damages for unlawful discrimination alleges and proves that he has paid a certain rate, whether the lawful rate or not, and a competitor in business has paid a lower

rate for the same service, then the difference in rate is the measure of his loss or damage. Tested by that rule there can be no recovery, under the complaint here attacked, for it alleges that no one of defendant's patrons who were granted a lower rate was a competitor of the city. * * * "

Interstate Commerce Commission v. United States ex rel. Campbell, 289 U.S. 385, 53 S.Ct. 607, 609, 77 L.Ed. 1273, is illustrative of the third group of authorities above mentioned, and, we believe, reflects the majority American view upon the question. The case involved the provision against discrimination contained in the Interstate Commerce Act from which the Pennsylvania statute was distinguished in Pennsylvania Ry. Co. v. Hall, supra. The Texas statute, Article 1438, is similar to the provision of the Interstate Commerce Act, 49 U.S.C.A. § 3(1), and unlike the Pennsylvania or Colorado Acts hereinabove mentioned.

▆▆▆▆ We quote from the opinion of the Supreme Court of the United States, written by the late Mr. Justice Cardozo:

"The Commission does not find, and the complainant does not assert, that the rate was unreasonable in the sense that it would be subject to condemnation if a like rate had been charged to others similarly situated. What is unlawful in the action of the carriers inheres in its discriminatory quality, and not in anything else. When discrimination and that alone is the gist of the offense, the difference between one rate and another is not the measure of the damages suffered by the shipper. Pennsylvania R. Co. v. International Coal Min. Co. 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315; Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U.S. 247, 258, 33 S.Ct. 916, 57 L.Ed. 1472 [1476]; Southern Pac. Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 534, 38 S.Ct. 186, 62 L.Ed. 451, [455 P.U.R.1918B, 598]; Keogh v. Chicago & N. W. R. Co., 260 U.S. 156, 165, 43 S.Ct. 47, 67 L.Ed. 183, [188]. Cf. Postal Teleg. Cable Co. v. Associated Press, 228 N.Y. 370, 379, 380, 127 N.E. 256 [P.U.R.1920E, 1]. It is an evidentiary circumstance to be viewed along with others in the setting of the occasion. It is not the measure without more. Pennsylvania R. Co. v. International Coal Min. Co., [230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315], supra;

Keogh v. Chicago & N. W. R. Co., [260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183], supra.

"Overcharge and discrimination have very different consequences, and must be kept distinct in thought. When the rate exacted of a shipper is excessive or unreasonable in and of itself, irrespective of the rate exacted of competitors, there may be recovery of the overcharge without other evidence of loss. 'The carrier ought not to be allowed to retain his illegal profit, and the only one who can take it from him is the one that alone was in relation with him, and from whom the carrier took the sum.' Southern Pac. Co. v. Darnell-Taenzer Lumber Co., supra, 245 U.S. [531], 534, 38 S.Ct. 186, [62 L.Ed. 451, 455, P.U.R. 1918B, 598]. But a different measure of recovery is applicable 'where a party that has paid only the reasonable rate sues upon a discrimination because some other has paid less.' Southern Pac. Co. v. Darnell-Taenzer Lumber Co., supra. Such a one is not to recover as of course a payment reasonable in amount for a service given and accepted. He is to recover the damages that he has suffered, which may be more than the preference or less (Pennsylvania R. Co. v. International Coal Min. Co., supra, 230 U.S. 206, 207, 33 S.Ct. 893, [57 L.Ed. 1455, Ann.Cas.1915A, 315]), but which, whether more or less, is something to be proved and not presumed. Id., 230 U.S. at page 204, 33 S.Ct. at page 893, 57 L.Ed. at page 1455. 'Recovery cannot be had unless it is shown, that as a result of defendant's acts, damages in some amount susceptible of expression in figures resulted.' Keogh v. Chicago & N. W. R. Co. supra, 260 U.S. 165, 43 S.Ct. 47, 50 [67 L.Ed. 189]. The question is not how much better off the complainant would be today if it had paid a lower rate. The question is how much worse off it is because others have paid less.

"The answer to that question is not independent of time and place and circumstance. It calls for something more than the use of a mathematical formula. If by reason of the discrimination, the preferred producers have been able to divert business that would otherwise have gone to the disfavored shipper, damage has resulted to the extent of the diverted profits. If the effect of the discrimination has been to force the shipper to sell at a lowered market price (Pennsylvania R. Co. v. International Coal Min. Co. supra, 230 U.S. p.

207, 33 S.Ct. 893, [57 L.Ed. 1455, Ann.Cas. 1915A, 315]; Hoover v. Pennsylvania R. R. Co., 156 Pa. 220, 224, 27 A. 282, 22 L.R. A. 263, 36 Am.St.Rep. 43), damage has resulted to the extent of the reduction. But none of these consequences is a necessary inference from discrimination without more. * * *"

From what has been said, it follows that the proposition upon which the trial court's award of damages is based must be rejected. Appellee has failed to establish a factual basis for a recovery of damages. The judgment of the trial court is accordingly reversed and judgment here rendered that appellee take nothing.

Reversed and rendered.